S. E. SOLOMON ET AL., APPELLANTS, V. J. A. FLEMING ET AL., APPELLEES.

[FILED FEBRUARY 17, 1892.]

1. **County Seat:** RELOCATION. Where, at an election called for the purpose of relocating a county seat, the place at which the county seat is then located receives three-fifths of all the votes cast, there is a relocation within the meaning of the statute.

2. —— : —— : NEW ELECTION. Where at such an election the county seat is relocated at the place where it was located, at the time of the holding thereof, there is no authority for the calling of an election to relocate the county seat in such county within five years next following such relocation.

3. **Injunction :** WASTE OF PUBLIC FUNDS. A court of equity will, on the application of resident taxpayers, restrain public officers from doing an illegal act where the effect of such act, if consummated, would be a waste of public funds raised by taxation.

APPEAL from the district court for Hitchcock county. Heard below before COCHRAN, J.

*J. W. Cole*, for appellants, cited, contending that a construction which exempted the five-year limitation from applying to places which were at the time county seats would make the statute unconstitutional because special legislation: *State v. Elliott*, 23 N. E. Rep. [O.], 931; *State, ex rel. Oblinger, v. Spande*, 34 N. W. Rep. [Minn.], 164; *Nichols v. Walter*, 33 Id., 800; *State, ex rel. Ferguson, v. Shropshire*, 4 Neb., 411–12; *Fussier v. Rhein*, 22 N. E. Rep. [Ill.], 848; *State v. Hammer*, 42 N. J. L., 439; *Devine v. Com'rs*, 84 Ill., 590.

*F. M. Flansburg, contra*, cited, contending that no ground for injunction existed: *Walton v. Develing*, 61 Ill., 201; *Norman v. Otoe Co.*, 8 Neb., 18; *Weber v. Timlin*, 34 N. W. Rep. [Minn.], 29; *D. & S. C. R. Co. v. C. F. & M. R. Co.*, 39 N. W. Rep. [Ia.], 691; *Parody v. Sch. Dist.*, 15 Neb., 514; *N. Y. v. Mapes*, 6 Johns. Ch. [N. Y.], 46; *McMillen v. Butler*, 15 Kan., 63; *Mills v. Palermo*, 12 Id., 14; *W. & K. C. B. Co. v. Com'rs*, 10 Id., 326; *State, ex rel. Pierce, v. Com'rs*, 12 Pac. Rep. [Kan.], 942; *Garst v. People*, 62 Ill., 306; *Dickey v. Reed*, 78 Id., 262; High, Inj., secs. 1286, 1425.

POST, J.

At a special election held in Hitchcock county on the 16th day of November, 1886, in pursuance of a call made by the county commissioners of said county, for the purpose of relocating the county seat, the village of Culbertson, which was then the county seat, received more than three-fifths of all the votes cast. On the 17th day of July, 1889, the defendants, the commissioners of said county, were about to call a second election for the purpose of relocating the county seat, when the plaintiffs, who are

residents, electors, and taxpayers of said county, remonstrated against such action on the ground, among others, that since Culbertson had at the election mentioned received more than three-fifths of all the votes cast, there was no authority for the calling of a second election within five years from the date of the first. On the overruling of their remonstrance by the county commissioners the plaintiffs brought this action for the purpose of enjoining the calling of said election. A temporary injunction was allowed, but on the final hearing the district court entered judgment for the defendants and dismissed plaintiffs' petition, from which judgment they appeal.

Plaintiffs contend that the statute, article 3, chapter 17, Compiled Statutes, does not authorize a relocation of the county seat in this instance within five years following the 16th day of November, 1886; while the contention of the defendants is that inasmuch as Culbertson, which received three-fifths of all the votes cast at that election, was at said time the county seat, the question may be again submitted at any time after the expiration of two years next following said date.

It is provided by section 2 of the act in question, that in case no one place has received three-fifths of the votes cast at the first election, and if it further appear that three-fifths of all the votes cast shall be for places other than the county seat, it shall be the duty of the board to call a second election. If the county seat receives more than two-fifths of the votes, there is no authority for a second election. In case a second election is authorized by the result of the first, then by section 3 the voters are restricted to a choice between three places, viz., the present county seat and the two places other than the county seat which at the preceding election received the greatest number of votes. By section 4 it is provided that if three-fifths of the votes so cast (at the second election) shall be in favor of relocating the county seat at either of the three places

voted for (viz., the county seat and the two places other than the county seat having the greatest number of votes at the first election), such place shall become and remain the county seat, etc.

Section 8 provides as follows: " If, at either of the elections in this act provided for, more than two-fifths of the votes cast shall be in favor of the place where the county seat is then located, the question of the relocation thereof shall not be again submitted for the space of two years from the date of said election, and in case the county seat shall be relocated as herein provided for, the question of the relocation thereof shall not be again submitted to the electors for the space of five years thereafter."

Our conclusion from the several sections of the act is that if at any of the elections provided for therein the county seat shall receive more than two-fifths and less than three-fifths of the votes cast, the question of relocation may be again submitted at any time after the expiration of two years next following.    But should any one of the several places, including the county seat, receive three-fifths of all the votes cast—that is to say, if the county seat should be relocated—the question cannot be again submitted until the expiration of five years next following.    It follows, therefore, that there was no authority for the calling of an election to relocate the county seat at the time in question, to-wit, July 17, 1889.

It is further contended that plaintiffs are not shown to have such an interest in the subject-matter as will entitle them to maintain the action.    It is admitted that plaintiffs are resident electors and taxpayers of Hitchcock county; that a taxpayer may interpose by means of an injunction to prevent the waste of public funds, is a proposition generally recognized in equity jurisprudence and has been repeatedly asserted by this court. (*Normand v. Otoe Co.*, 8 Neb., 18.)    We are bound to take notice that the relocation of a county seat, necessarily involving one, and pos-

sibly two or more elections, will impose no inconsiderable burden upon the people in the way of taxation. Since the county board were acting without authority of law in calling the election, we can see no reason why a complaining taxpayer should remain 'idle until the election had been held and the rights of innocent parties intervened. The remedy by contest provided by statute, section 64, chapter 26, Compiled Statutes, is not exclusive. (*State v. Stearns*, 11 Neb., 104; *State v. Frazier*, 28 Id., 438.) In the first named case it was held that a writ of *mandamus* would issue on the application of a resident of the county to compel the canvassing board to count certain votes rejected by them, which had been cast at an election called for the purpose of relocating a county seat. The reasoning of the present chief justice in that case applies with equal force to this. The judgment of the district court will be reversed and judgment entered in this court for the plaintiffs in accordance with the prayer of this petition.

REVERSED.

THE other judges concur.