(108 So. 59)

**DENNIS et al. v. PRATHER et al.**
**(4 Div. 198.)**

(Supreme Court of Alabama. Jan. 27, 1925.)

1. **Counties** ☞33—**Legislature has plenary power in matter of permitting removal of county seats, except as limited by constitutional provision.**

Legislature has plenary power in matter of permitting location or removal of county seats, except as limited by Const. 1901, § 41.

2. **Counties** ☞33—**Removal of county seat in county which has constructed courthouse within last 20 years unlawful under statute.**

Under Acts 1903, p. 117 (Code 1923, §§ 267–299), there may be no lawful removal of county seat in any county which within last 20 years has constructed a new courthouse.

3. **Constitutional law** ☞74—**Whether county has constructed courthouse within last 20 years, within statute relating to removal of county seats, is judicial, not executive question.**

Under Code 1923, §§ 267–299, authorizing removal of county seats in counties which have not, within last 20 years, constructed new courthouse, and particularly section 268, authorizing appointment by Governor of Commissioners of county seat election, Governor's determination that no new courthouse has been constructed in particular county, necessarily implied from his appointment of commissioners is not conclusive, such question being finally for courts.

4. **Injunction** ☞80—**Equity will restrain election wholly unauthorized by law in absence of legal remedy.**

Though courts of equity will not interfere by injunction with elections political in character, or take jurisdiction of contest after election, where a contemplated election is

wholly unauthorized by law, and no adequate legal remedy appears, equity will restrain such election.

**5. Equity ☜2—Statutes restricting jurisdiction of equity courts should be strictly construed.**

Statutes restricting jurisdiction of equity courts should be strictly construed.

**6. Injunction ☜80—Statute, declaring equity jurisdiction held not to preclude court from enjoining unauthorized election.**

Code 1923, § 549, relating to equity jurisdiction in election contest cases, does not preclude court of equity from enjoining election wholly unauthorized by law.

**7. Injunction ☜80—That validity of election may be tested after election does not warrant denial of injunction to restrain illegal election.**

That validity of election may be tested after election is not an adequate remedy, warranting court's refusal to restrain election wholly unauthorized by law.

**8. Counties ☜33—Repair of old courthouse held in effect building of "new courthouse" within statute.**

County's repair of old courthouse, which in effect was a rebuilding, in which only three walls of old building were used, *held* in effect building of "new courthouse," within statute prohibiting removal of county seat in counties which have constructed new courthouse within last 20 years (citing Words and Phrases, First Series, "New Building").

Appeal from Circuit Court, Russell County; J. S. Williams, Judge.

Bill in equity by John Prather and others against T. H. Dennis and others. Decree for complainants, and respondents appeal. Affirmed.

Bill to enjoin the holding of a county seat election in Russell county. The bill is filed by John Prather, a taxpayer, and the board of revenue of the county, against T. H. Dennis, Charles R. Illges, and T. H. Ingram, Jr., composing the board of commissioners of Russell county, known as the commissioners of county seat election.

The bill avers that the respondents were appointed commissioners by the Governor of Alabama, under proceedings had under article 14 of the Code of 1923, to hold an election for the purpose of submitting to the qualified electors of Russell county the proposition of whether or not a majority of the electors of said county desire that the county seat shall remain at Seale, Ala., or be removed to Phoenix City, Ala., and said commissioners have published a notice of said proposed election to be held on the 29th of January, 1925.

The bill avers that Russell county has built a new courthouse within the past 20 years, and that the call for such election is there-fore null and void, and of no legal and binding effect. The prayer is that the respondents and all other officers of election named for the purpose of holding the same, be restrained and enjoined from holding the election, counting the ballots, or declaring the results.

The respondents filed demurrers going to the equity of the bill, accompanied with an answer admitting their appointment as a board of commissioners of county seat election. The answer denies that a new courthouse was built within 20 years, but avers that the courthouse, which has been standing for more than 20 years, was improved; that addition was made thereto, small in comparison to the building that was already standing, with other repairs and improvements, and did not constitute the erection of a new courthouse. The petition presented to the Governor is made an exhibit to the answer, reciting, among other things, "that there has not been a courthouse built in said county for more than 20 years next preceding this time."

The cause was submitted upon demurrers and motion to dissolve the injunction. The motion was heard upon the bill and exhibits, sworn answer and exhibits, minutes of the commissioners' court showing the orders and contract made in 1908 for the improvement of the courthouse, and the proceedings to issue bonds for the purpose of paying the debts created for construction of the courthouse and jail, and affidavits submitted by the parties. The court overruled the demurrers and the motion to dissolve the injunction, and decreed that the same be made permanent. The appeal is from this decree.

The respondents, in support of the motion to dissolve the injunction, introduced the affidavit of D. C. Foster, as follows:

"About 1908 I was a member of the court of county commissioners of Russell county, Ala., and was such member at the time of the improvement of the courthouse at Seale. I recall the matter, and a new courthouse was not built; the courthouse was in bad repair and the commissioners decided to improve and repair it, inside and outside; the courthouse walls were not disturbed; but the old building was coated or veneered, on all sides with a 4-inch brick, stone being laid at the bottom to support the brick; the roof was repaired; the interior was repainted and replastered; at one end there was a slight extension; and, on the inside, water fixtures were put in. The roof plan was not changed, and it was simply a repairing and improving of the building. The courthouse today is the same courthouse that Russell county has had for more than the past 30 years, and during that time no new courthouse has been built in Russell county. As I have stated, I was a member of the court of county commissioners when the work on the courthouse was done."

☜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The complainants introduced the affidavit of L. H. Boykin, who deposes that he was a member of the commissioners' court during the years 1909, 1910, and 1911; that an issue of bonds was duly authorized to pay the debt created in the construction of the courthouse and jail; and describes the improvements or rebuilding of the courthouse as follows:

"That a part of the courthouse building then standing was used for the construction of the new courthouse now standing, to wit, the old north wall, the old east wall, and the old south wall of said building, but that the foundations to these several walls were not sufficient for the new building being erected, and new foundations to these several walls had to be made; that the west wall and portico and pillars of said building were torn down, and an entirely new and enlarged west end, consisting of four entirely new offices and halls and stairways were constructed; that the three walls above referred to were the only material of the old courthouse which was used in the construction of the present courthouse; that the concrete foundation of the present courthouse, all of its floors, · ceilings, side walls, partitions, jury rooms, and witness room, the entire roof, windows, doors, stairways, and banisters, vaults, seats, judge's stand, and clerk's desk, and lighting system were constructed of new and different material from that used in the old, courthouse; that every room and office in said building is now an entirely new room or office."

The affidavits of M. A. Bush, a member of commissioners' court during the years 1909, 1910, 1911, and 1912, and T. G. Burch, Sr., sheriff of the county for the term beginning on January 16, 1911, were introduced by complainants, and are to the same effect as the affidavit of L. H. Boykin.

W. J. Bird, of Phoenix, F. M. de Graffenried, of Seale, and Denson & Denson, of Opelika, for appellants.

Courts of equity do not exert their extraordinary power in political matters, such as interfering with the holding of popular elections. 32 C. J. 240–254; Shoemaker v. Des Moines, 129 Iowa, 244, 105 N. W. 527, 3 L. R. A. (N. S.) 382; McAlester v. Milwee, 31 Okl. 620, 122 P. 173, 40 L. R. A. (N. S.) 576; Conner v. Gray, 88 Miss. 489, 41 So. 186, 9 Ann. Cas. 120; Duggan v. City of Emporia, 84 Kan. 429, 114 P. 235, Ann. Cas. 1912A, 719; Jones v. Black, 48 Ala. 540; Profile Cot. Mills v. Calhoun W. Co., 189 Ala. 181, 66 So. 50; Frances v. Gilbreath C. & I. Co., 180 Ala. 338, 60 So. 919; Lauderdale v. McAllister, 193 Ala. 175, 68 So. 984; Rice v. Davidson, 206 Ala. 226, 89 So. 600. Complainants should be remitted to their remedy at law, after election. 32 C. J. 255. The court had no jurisdiction to review the action of the Governor in passing upon the petition. Armstrong v. O'Neal, 176 Ala. 611, 58 So. 268.

W. H. Merrill, of Eufaula, and B. de G. Waddell and H. A. Ferrell, both of Seale, for appellees.

Where an election is without authority of law and would be void, it will be enjoined. 2 High on Inj. 1260; Solomon v. Fleming, 34 Neb. 40, 51 N. W. 304; City of Mobile v. Mobile Elec. Co., 203 Ala. 574, 84 So. 816; Coleman v. Eutaw, 157 Ala. 327, 47 So. 703.

BOULDIN, J. Prior to 1901 the Legislature possessed plenary powers in the location and removal of county seats. Marengo County v. Matkin, 134 Ala. 275, 288, 32 So. 669. The Constitution of 1901, § 41, declares:

"No courthouse or county site shall be removed except by a majority vote of the qualified electors of said county, voting at an election held for such purpose, and when an election has once been held no other election shall be held for such purpose until the expiration of four years."

[1, 2] This provision is a limitation upon the legislative power, and aside therefrom the plenary power of the Legislature remains as theretofore. By Act approved March 3, 1903 (Acts 1903, p. 117), the Legislature made provision for elections upon the question of removal of county seats. The substantial provisions of this Act now appear as sections 267 to 299 of the Code of 1923. Sections 267 and 268 read as follows:

"267. (175) *Petition of Qualified Electors for Election to Change County Seat.* A majority of the qualified electors of any county, except those counties that have built new courthouses in the past twenty years, may petition the Governor in writing, praying that an election be held in such · county for the purpose of determining, whether the county seat or site shall be removed from the city, town, or village where it is then located, to another designated city, town or village in such county.

"268. (176) *Governor Appoints Commissioners.* The Governor shall, within thirty days after the filing of the petition with him, appoint three commissioners for such election, who shall be qualified electors of such county, and shall not hold any state or county office; and thereupon the Governor shall cause them to be notified of their appointment."

A county in which a new courthouse has been built within 20 years of filing the petition is thus expressly excepted from the removal statute. Such county is withdrawn from its operation. The effect is, that in a county so situated, no lawful removal of the county seat may be had. No "board of commissioners of county seat election" is authorized in such county.

[3] One major inquiry here presented is, how is the operation of the law in a given county to be ascertained, and by what tribunal is it to be determined? The appellants

contend that this authority is vested in the Governor, and that the judicial department should not interfere with the exercise of executive power. Section 298 of the Code of 1923 reads as follows:

"The Governor shall not entertain any petition hereunder which he may have reason to believe is not made in good faith by persons desiring a removal of the county seat. If two or more bona fide petitions with respect to the proposed removal of the county seat of a county to two or more different points in the county shall be pending before the Governor for the appointment of commissioners, the Governor shall favor the proceeding which, in his judgment, is best calculated to result in a permanent location of the county seat."

It will be noted that the Governor is vested with two matters of discretion: First, whether the petition is made in good faith by persons desiring a removal of the county seat; second, where there are two or more bona fide petitions seeking a removal to different locations, he may choose the one which, in his judgment, is best calculated to result in a permanent location of the county seat. In the exercise of this discretionary power the courts cannot interfere. Armstrong v. O'Neal, 176 Ala. 611, 58 So. 268; State ex rel. Brown v. Porter, 145 Ala. 541, 40 So. 144; Pryor Motor Co. v. Hartsfield, 207 Ala. 646, 93 So. 524; Crenshaw v. Joseph, 175 Ala. 579, 597, 57 So. 942.

The statute nowhere expressly requires the Governor to determine whether a courthouse has been built in the county within 20 years; that is, to determine whether the law is operative in the county; but the insistence is that he is charged with the duty to ascertain the conditions calling for executive action. The executive duty imposed upon the Governor is the appointment of the board of commissioners. Whatever preliminary findings he must make are incidental to the exercise of this executive function. The executive must frequently determine whether he is called upon to exercise his executive appointing power. For example, many cases arise of supposed vacancies in office. Necessarily he must determine whether there is a vacancy and proceed to fill it. But it has never been supposed that his decision that a vacancy exists is final. The inquiry whether there is a lawful office to be filled, and whether a vacancy has occurred therein, are matters essentially judicial in character. It is the duty of the judicial department to determine what the law is. This duty extends to questions involving whether executive acts are authorized by law. Clark v. State ex rel. Graves, 177 Ala. 188, 59 So. 259.

The removal proceedings before the Governor are purely ex parte. There is no provision for notice and hearing by parties opposed in interest. We are of opinion that the appointment of commissioners by the Governor is not conclusive, and it is the duty of the courts to determine whether the law is operative in Russell county at this time, whether the lawful office of commissioner of county seat election has come into being, and whether the appointee is holding a lawful office or not.

[4] A question further presented is, has a court of equity any jurisdiction to enjoin the holding of the removal election? The general rule without question is that courts of equity will not interfere by injunction with the holding of elections political in character, nor take jurisdiction of a contest after the election is held. But this court is committed to the proposition that equity will interfere by injunction to restrain elections not authorized by law. It will also restrain the usurpation of office, or the assumption of functions of office where no lawful office exists. In City of Mobile v. Mobile Electric Co., 203 Ala. 574, 578, 84 So. 816, 819, the bill was filed to enjoin the holding of an election approving a municipal ordinance intended to reinstate the rates for service charges by a public utility. The court found that the rates proposed to be reinstated had never been lawfully suspended. Speaking by Anderson, C. J., the court said:

"As the contract was never legally suspended, and the resolution attempting to do so was a nullity, an election to adopt an ordinance to reinstate said contract would be a useless and expensive performance, and there was no error in granting the injunction to this extent, as the proposed election was not of a political nature, but involved business or property rights, and the complainant, as a taxpayer, had the right to enjoin same."

In Petree v. McMurray, 210 Ala. 639, 98 So. 782, this court sustained an injunction restraining election commissioners from holding an election for county superintendent of education, upon the ground that the act providing for the election was unconstitutional, in that its effect was to remove the incumbent from office in violation of section 175 of the Constitution.

[5, 6] Appellants rely upon section 549 of the Code of 1923. This section dates back to 1875. In Coleman v. Town of Eutaw, 157 Ala. 330, 47 So. 703, it was said that by this statute "our courts of equity are forbidden jurisdiction of election contests." See, also, Casey v. Bryce, 173 Ala. 137, 55 So. 810. Statutes restricting the jurisdiction of courts of equity, as defined at common law, and reiterated by statute in Alabama, should be strictly construed. Construing this statute as a whole, it appears, broadly speaking, to cover cases inquiring into the validity of elections theretofore held—a proceeding in the nature of a contest of an election, whether the legality, conduct or results of the election be the point of attack. We doubt if it would include a case of injunction against the exercise of any form of official power,

derived through or by virtue of an election not authorized by law and therefore wholly void. The equity jurisdiction in such case does not rest so much upon matters going to the conduct of the election, but upon the usurpation or abuse of official power under color of a void election. The statute was enacted prior to the statute before us and other similar statutes authorizing a referendum to the voters of a county or other municipal corporation in matters pertaining to their corporate functions. We are of opinion section 549 does not apply to the case before us. Following our former decisions, and, we think, in keeping with sound principles, we hold that the court of equity has the power by injunction to prevent the holding of such election as is here involved, in a case wholly unauthorized by law, there appearing no adequate legal remedy. 2 High on Injunction, p. 1260, § 1250; Solomon v. Fleming, 34 Neb. 40, 43, 51 N. W. 304; 32 C. J., p. 251, § 393; Streissguth v. Geib, 67 Minn. 360, 67 N. W. 1097.

[7] It is suggested by appellants that if the election is void or voidable it can be tested by other proceedings after the election, and that there is no occasion for an injunction. We think this is not an adequate remedy. It means the useless incurring of all the expense, loss of time, and inconvenience of holding the election, and the confusion and uncertainty which would follow such conditions.

The proceeding in State ex rel. Brown v. Porter, 145 Ala. 541, 40 So. 144, was in the nature of prohibition and quo warranto to test the authority of the commissioners to proceed. The case was decided upon the merits, sustaining the legality of their appointment, and does not appear to shed any light upon the question before us.

Coleman v. Town of Eutaw, 157 Ala. 327, 47 So. 703, was a bill in equity to enjoin the issuance of improvement bonds, because of invalidity of the election in which the bonds were authorized, the point of attack being that the ballot used in the election did not conform to constitutional requirements. It was declared the provision for a contest of an election does not take away the jurisdiction of the chancery court to enjoin the issuance of the bonds.

[8] The provision excepting counties in which a new courthouse has been built within 20 years has the manifest purpose of preventing the additional burden of erecting new public buildings at the expense of the taxpayers of the county. This purpose should guide us in construing this provision. Seeking to give the term "new courthouse" its natural meaning in the connection used, it does not include a case of repairs and minor alterations or additions wherein the original building retains its identity. Neither does it exclude a building in which some considerable portion may remain intact and be incorporated in the new structure. In passing upon the question of fact whether there was a new courthouse built in Russell county, the opinions expressed in the bill or answer or in the affidavits carry no great weight. From the detailed statement of the changes, enlargement, and reconstruction of the building, as shown by the affidavits, we are convinced a new courthouse, within the meaning of the law, was built in Russell county. 5 Words and Phrases, page 4784, "New Building"; Warren v. Freeman, 187 Pa. 455, 459, 41 A. 290, 67 Am. St. Rep. 583; Delione v. Long Branch Commission, 55 N. J. Law, 108, 25 A. 274.

It follows that no removal of the county seat of Russell county can lawfully be made; that no lawful election can be held for that purpose; that there can be no lawful commissioners appointed to conduct the election; that there are no such offices to be filled.. An election under such conditions would be a mere straw vote, having no legal effect if attacked in a proper proceeding by proper parties. All the expense and inconvenience to the voters and taxpayers of the county would be useless. It seems a plain duty to so determine beforehand. The rights and interests of the electorate are better promoted by a decision in advance, advising the commissioners of their want of power, and restraining them from proceeding with a meaningless and useless election. It is unnecessary to consider cumulative or alternative grounds of relief set up in the bill.

The injunction was properly issued, and the decree of the lower court sustaining the same is affirmed.

Affirmed.

All the Justices concur.