Mr. Larry M. Haag Citrus County Attorney 111 West Main Street Third Floor Inverness, Florida 34450
Mr. James A. Neal, Jr. Attorney for the City of Inverness 212 West Main Street Inverness, Florida 34450
Dear Mr. Haag and Mr. Neal:
Citrus County and the City of Inverness jointly request an opinion on substantially the following question:
When a county constructs a 40,000-square-foot addition to the county courthouse and executes extensive renovations to the existing structure would it constitute a "new" courthouse under section 138.10, Florida Statutes, such that the county is precluded for twenty years from expanding the county seat?
In sum:
Renovations and additions to the existing courthouse of such extent to rival the actual construction and expense of a "new" courthouse could be considered a "new" courthouse for purposes of imposing the restriction on removal or expansion of the county seat set forth in Chapter 138, Florida Statutes. There is a need, however, for the Legislature to address these restrictions in order to better meet the needs of a growing population where there are several population centers spread throughout a county and this office will offer its support in urging the Legislature to act. During the interim, the county may consider the use of branch offices to provide more convenient access to county government for the populace.
You have provided the following background information. The City of Inverness has been the county seat of Citrus County since 1889. In 1912, a building was constructed and served as the county's courthouse until 1978, when a new building of approximately 52,637 square feet was constructed. Over the years, renovations were made to the courthouse, and other buildings were utilized for various county functions. The county commission is now contemplating an addition of 40,000 square feet to the courthouse, to provide additional space for all county officers and to add two courtrooms. Extensive renovations are also planned for the existing structure.
The county is also contemplating expanding the county seat to include four distinct parcels in the community of Lecanto, approximately eleven miles west of Inverness. In Lecanto, the county now has its Public Works Department, a 400-bed jail, an emergency operations center, and a 78,425-square-foot building that houses county commission employees. According to a proposed map and your materials, the expansion requires an eleven-mile corridor along a state road, then attachment of the distinct parcels by threads of land. The county is concerned, however, that the addition and renovations to the current courthouse could be considered as constituting a "new" courthouse that would preclude expansion of the county seat.
The Florida Constitution provides that every county shall have a county seat where the principal offices and permanent records of all county officers are located.[1] While the constitution recognizes that a county may move its county seat once it is established, the county seat may be moved only as provided by general law.
Chapter 138, Florida Statutes, governs the relocation of county seats. With the exception of section 138.12, Florida Statutes, the entire chapter addresses the manner in which a county may change its county seat. Section 138.01, Florida Statutes, provides that the qualified electors in any county may petition the county commissioners for a change of the location of the county seat. If the petition meets the statutory requirements, the county commission must order an election to be held in the same manner as prescribed by general law for a general election.[2] No later than five days after the election, the county commission must publicly canvass the election and the place receiving a majority of the votes cast becomes the county seat for the next ten years.[3]
There are other provisions addressing the course of action should there be three or more suggested sites for the county seat and no municipality receives a majority of the votes, but they would have no application to the present question.
The origins of Chapter 138, Florida Statutes, date to 1890 and the statute reflects a time when a county may have only one area of somewhat dense population, with the remainder of a county's populace spread across a rural landscape. Section 138.10, Florida Statutes, pertinent to the instant situation, was created in 1911. Section 138.10, Florida Statutes, provides:
"The provisions of this chapter shall not apply to any county having constructed a new courthouse within the past 20 years, other than a county having constructed a courthouse of wood, in which the county seat is situated, in any town or city not located on any line of railroad transportation."
Thus, the Legislature precludes a county from moving its county seat if the county has constructed a new courthouse within the last twenty years. This section has been interpreted to mean "nothing more nor less than to postpone all removal contests until the courthouse shall be 20 years old."[4] The practical reason behind enactment of the law is to "safeguard the property rights of the taxpayers as against the wishes of those who enjoy the agitation of the political arena."[5]
While the restriction in section 138.10, Florida Statutes, has not been extensively interpreted by the courts of this state, it would appear to indicate the Legislature's intent to prevent wasteful expenditures of county funds for a new county courthouse when the county's needs are being met by an existing structure that is far from obsolete. Substantial additions and alterations to an existing courthouse might well be considered by a court to be a "new" courthouse for purposes of the statute, but it is a factual determination beyond the authority of this office to make.[6] It would fulfill the Legislature's intent to prevent the unnecessary expenditure of taxpayers' money, however, to conclude that such a project would be comparable to the construction of a "new" courthouse for purposes of blocking the removal of the county seat for twenty years.
A more recent addition to Chapter 138, Florida Statutes, allows the county commission to expand the county seat. Section 138.12, Florida Statutes, enacted in 1973, provides:
"The board of county commissioners of any county may expand the geographical area of the county seat of its county beyond the corporate limits of the municipality named as the county seat by adopting a resolution to that effect at any regular or special meeting of the board. Such a resolution may be adopted only after the board has held not less than two public hearings on the proposal at intervals of not less than 10 or more than 20 days and after notice of the proposal and such meetings has been published in a newspaper of general circulation in the county. However, nothing herein shall be deemed to extend the boundaries of the municipality in which the county seat was previously located or annex to such municipality the territory added to the county seat."
The county commission's limited power to expand the county seat, however, should not be confused with the ability of the electorate to remove the county seat to another municipality. It would be beyond the authority of the county commission to expand the boundaries of the county seat beyond its municipal limits to annex another municipality and effectively make the newly encompassed municipality the county seat.[7] The county commission may not do indirectly what it has no authority to do directly in order to avoid the procedure that the Legislature has prescribed for effecting such a change.[8]
A review of the legislative history underlying the enactment of section 138.12, Florida Statutes, does not indicate that its application would be dependent upon whether a new courthouse has been built in the county seat. While the section itself is silent to such a restriction, the Legislature is presumed to have been aware of section 138.10, Florida Statutes, and its application to a county with a newly-constructed courthouse.
This office has been advised that a primary concern is the population shift to the western end of Citrus county and the need to provide convenient access to county offices for residents throughout the county. Comparing populations of Inverness with Crystal River and the county as a whole from 1910 to the present clearly shows a shift in population. In 1910, Citrus County had a total population of 6731, with 1264 in Inverness at the eastern side of the county and 663 in Crystal River at the western side of the county.[9] Population figures from 1998 show a county-wide population of 112,424, with 6,925 in Inverness and 4,221 in Crystal River.[10] There is further evidence of an increased population along the western coastal portion of the county in such unincorporated areas as Homosassa Springs (6,271), Sugarmill Woods (4073) and Homosassa (2113).[11] While there has been growth in other areas of the county,[12] the statistics reported above indicate an obvious population boom in the western side of the county. It is readily apparent that Lecanto would provide a more centralized location for county offices.
While the county commission is constrained to observe the statutory proscription on removing or expanding the county seat, this office recognizes the need for Legislative action to address what may be considered in modern times outdated provisions in Chapter 138, Florida Statutes. During the interim, however, it may be advisable to investigate the potential use of branch offices to better serve the shifting population centers in Citrus County.
This office recognizes that Florida now has many counties that contain several concentrated population areas, rather than a single town to which all of the county's residents are drawn. Thus, the concept of maintaining all principal offices within the confines of a county seat may not adequately serve the entire population of the county. The Legislature, therefore, needs to address the restrictions in Chapter 138, Florida Statutes, to more adequately allow counties to provide county services to their residents. Should the county wish to pursue such legislative action, this office is available for any support it may lend.
Accordingly, it is my opinion that section 138.10, Florida Statutes, precludes the county commission from moving or expanding the county seat where the county has built a new courthouse within the last twenty years or made such extensive renovations and additions to the existing courthouse that it is considered a new courthouse for purposes of the statute.
To the extent this opinion conflicts with previous opinions of this office they are hereby modified. Until such time that the Legislature addresses these restrictions in order to better meet the needs of a growing population where there are several population centers spread throughout a county, the county may consider the use of branch offices to provide more convenient access to county government for the populace.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] Article VIII, s. 1(k), Fla. Const. 
[2] Section 138.01, Fla. Stat., requires that a petition to change the county seat be signed by one-third of the qualified electors, who are taxpayers on real or personal property. Section138.02, Fla. Stat., requires "not less than 30 days' notice" for the election.
[3] Section 138.06, Fla. Stat.
[4] Collier v. Cassady, 57 So. 617, 618 (Fla. 1912).
[5] Id.
[6] See, Op. Att'y Gen. Fla. 59-69 (1959), wherein this office cited an Alabama case, Dennis v. Prather, 103 So. 59 (Ala. 1925), in which the Court considered the detailed statements of the changes, enlargement, and reconstruction of the courthouse, in the affidavits, to conclude that a new courthouse, within the meaning of a law substantially similar to Ch. 138, Fla. Stat., had been built.
[7] See, Alsop v. Pierce, 19 So.2d 799, 805-806 (Fla. 1944) (where the Legislature has prescribed the mode, that mode must be observed; a controlling law's direction as to how a thing shall be done is, in effect, a prohibition against its being done in any other way); Thayer v. State, 335 So.2d 815, 817 (Fla. 1976).
[8] See, Green v. Galvin, 114 So.2d 187 (Fla. 1st DCA 1959),cert. denied, 116 So.2d 775 (Fla. 1959), appeal dismissed,117 So.2d 844 (Fla. 1960) (well established principle that public officials cannot do indirectly that which they are prohibited from doing directly); Ops. Att'y Gen. Fla. 78-76 (1978) and 75-203 (1975).
[9] Citrus County Historical Society.
[10] Florida Estimates of Population, Bureau of Economic and Business Research, University of Florida, Department of Development Services, Community Development Division (1998).
[11] Municipal Reference Guide: Florida (1998).
[12] Areas such as: Beverly Hills, near Lecanto, population 6,163; Citrus Springs and Hernando, northwest of Inverness, populations 2213 and 2103, respectively; Floral City, southeast of Inverness, population 2609; and Lecanto, population 1243. Municipal Reference Guide: Florida (1998).