STUART, Justice.
Fred Lee Randall, David Russell, Eugene Edelman, John C. Harris, Michael Harneen, and David Toney, a group of electors in the City of Birmingham (hereinafter referred to collectively as the “electors”) appeal from a summary judgment entered in favor of the Water Works and Sewer Board of the City of Birmingham (“the Board”). In its summary-judgment order, the trial court declared invalid *759 a proposed ordinance submitted by the electors to the Probate Court of Jefferson County. We affirm.

Background

On or about October 2, 2002, the electors filed with Michael P. Bohn, the probate judge for Jefferson County, a “Petition for Ordinance to Reclaim the Water Works Assets for the City of Birmingham.” The electors requested that the probate judge certify their petition and submit the proposed ordinance to the Birmingham City Council for adoption by initiative or by referendum election. The electors filed their petition pursuant to the authority purportedly granted by Act No. 294, Ala. Acts 1965.
The purpose of the proposed ordinance was “to implement a plan to satisfy and redeem the debt of the Water Works and Sewer Board of the City of Birmingham in order to administer more effectively such systems and use the surplus revenues therefrom for needed improvements in city schools and other projects.” In order to accomplish this purpose, the ordinance authorized the City of Birmingham to redeem the debts of the Board and to cause the dissolution of the Board by operation of law, which would then vest title to the assets of the Board in the City. At the time the electors submitted their petition, the outstanding indebtedness of the Board was $550 million.
The ordinance submitted by the electors would appoint David A. Sullivan[1] as a special attorney for the City and would grant him virtually unlimited authority to accomplish the purpose of the ordinance. Examples of the authority granted Sullivan under the proposed ordinance include the authority to “execute and deliver such agreements, instruments and certificates as may be deemed necessary or desirable”; to certify the amount of funds necessary to refund the outstanding debts of the Board; to issue and sell revenue warrants to accomplish the refunding; to execute and approve a trust indenture; to set the terms for the redemption of all outstanding Board bonds; to select a financial institution in which to establish an escrow account; to determine all of the terms under which the revenue warrants shall be sold; to employ and pay any assistants he deems desirable; to incur expenses as he deems necessary; and to take any actions deemed desirable and necessary to operate and maintain the water works system upon the dissolution of the Board. In addition, the proposed ordinance requires the mayor and all employees, consultants, and attorneys for the City to assist and cooperate with Sullivan and to pay “all invoices for actual expenses incurred and provid[e] all information and assistance as requested by Mr. Sullivan.”
Under the ordinance, Sullivan was to be compensated for his services as special attorney for the City on a contingent basis, depending upon whether the City successfully reclaimed the Board’s assets. If the City was successful in its effort to take over the Board’s assets, Sullivan would receive $350 per hour for the hours he worked or 3% of the dollar amount of the bonds issued, whichever was greater. Because the Board’s outstanding debt is $550 million, Sullivan stood to earn a contingent fee of at least $16.5 million if the purpose of the ordinance was accomplished.
The probate judge determined that the petition, as amended, contained the signatures of a sufficient number of qualified electors.[2] Judge Bolin indicated that he *760 intended to certify the petition and submit the proposed ordinance to the Birmingham City Council unless and until a court of competent jurisdiction instructed him otherwise.
However, on October 28, 2002, before the probate judge could certify the petition and order that the proposed ordinance be submitted to the Birmingham City Council for consideration, the Board filed a declaratory-judgment action in the Jefferson Circuit Court. In its declaratory-judgment action, the Board alleged (1) that Act No. 294, under the authority of which the ordinance was presented, no longer applied to the City of Birmingham; (2) that Act No. 294 was unconstitutional;[3] (8) that the action contemplated by the proposed ordinance was beyond the authority of the Birmingham City Council; (4) that the proposed ordinance was invalid on its face; (5) that the proposed ordinance improperly delegated to Sullivan, the special attorney, the legislative authority of the Birmingham City Council; (6) that the actions contemplated by the proposed ordinance would violate the Board’s contractual obligations; (7) that the proposed ordinance contained subjects that were improper for initiative ordinances; and (8) that the proposed ordinance was overbroad, vague, and ambiguous. In addition to seeking declaratory relief, the Board sought a temporary restraining order and a permanent injunction preventing the probate judge from certifying the petition for consideration by the Birmingham City Council.
The trial court entered a temporary restraining order prohibiting Judge Bolin from certifying the petition and from presenting the proposed ordinance to the Birmingham City Council. Shortly after the issuance of the temporary restraining order, the electors moved to intervene in the Jefferson Circuit Court action as defendants; the trial court granted their motion. The trial court also granted the City’s motion to intervene as a defendant.
The Board and the electors filed motions for a summary judgment. On December 13, 2002, the trial court held a hearing on the motions. On February 5, 2003, the trial court entered a summary judgment for the Board, finding that the proposed ordinance “unlawfully and unreasonably delegates the power of the City. The Court finds that the ordinance is void and is not to be certified.” The trial court then dissolved the temporary restraining order directed at Judge Bolin, finding no further need for the restraining order.
On February 28, 2003, the electors filed a motion to alter, amend, or vacate the judgment, pursuant to Rule 59(e), Ala. R. Civ. P. On April 13, 2003, the trial court denied the electors’ Rule 59(e) motion. On May 6, 2003, the electors filed a notice of appeal to this Court, asserting the following:
“I. The circuit court lacked subject-matter jurisdiction over the Board’s claims.
“II. The circuit court did not have general original jurisdiction over the Board’s claims because the Legislature vested it in the probate court.
*761 “III. The circuit court lacked jurisdiction to issue declaratory relief because all persons had not been made parties, as required by Ala.Code § 6-6-227.
“IV. Act. No. 294, Ala. Acts 1965, confers no right of action on the Board to complain against the probate judge delivering the proposed ordinance to the City.
“V. The proposed ordinance does not unlawfully or unreasonably delegate the powers of the City to a special attorney. “VI. The trial court wrongly found that the Board’s status as an entity separate from the City prevented the City from purchasing bonds, paying the Board’s debt, and receiving its assets, as provided in Ala.Code § ll-50-237(c).”

Standard of Review

In Auburn University v. Advertiser Co., 867 So.2d 293, 299 (Ala.2003), this Court stated:
“ ‘Appellate review of a trial court’s ruling on a motion for summary judgment submitted on exhibits and written evidentiary materials is de novo, with no deference to the decision by the trial court.’ Ex parte Breitsprecher, 772 So.2d 1125, 1129 (Ala.2000). See also Bank of Brewton, Inc. v. International Fid. Ins. Co., 827 So.2d 747 (Ala.2002). ‘Legal conclusions are never accorded a presumption of correctness on appellate review.’ Ex parte Cain, 838 So.2d 1020, 1026 (Ala.2002).”

Jurisdiction

The electors argue that the Jefferson Circuit Court lacked jurisdiction to hear the Board’s declaratory-judgment action because (1) the issue whether the Board’s debt might be paid in full by the issuance of refunding bonds pursuant to the ordinance is a mere possibility and therefore is not ripe for judicial resolution; thus, no case or controversy exists; (2) the Board failed to allege that it would be injured by the City Council’s consideration of the proposed ordinance and, therefore, the Board lacked standing to obtain a judicial ruling on the proposed ordinance; and (3) pursuant to Act No. 294, the probate court, not the circuit court, has been specially designated to resolve claims regarding proposed ordinances like this one.
We first address the electors’ claim that the Board failed to present an actual case or controversy appropriate for a declaratory judgment and that, therefore, the circuit court lacked jurisdiction over the Board’s action. In its complaint for in-junctive and declaratory relief, the Board alleged that the proposed ordinance is invalid, that Act No. 294 no longer applies to the City of Birmingham, and that Act No. 294 is unconstitutional. If the Board’s allegations are true, which we address below, Judge Bohn had no jurisdiction to review the electors’ petition and certify it for submission to the Birmingham City Council; the Birmingham City Council had no authority to consider the proposed ordinance pursuant to initiative powers of Act No. 294, and any consideration of the proposed ordinance by the voters of the City of Birmingham in a referendum would have been a waste of time and expense. At the time the Board filed its complaint, the probate court had already begun its review of the electors’ petition. The Board’s complaint sought to enjoin the probate court’s review in this case and prevent similar actions from occurring in the future and sought a judgment declaring the proposed ordinance invalid.
We conclude that in its complaint the Board alleged an actual controversy. We do not find it dispositive that the proposed ordinance has not yet been adopted or enacted. In a similar case, Dennis v. Prather, 212 Ala. 449, 103 So. 59, 62 (1925), *762 the Alabama Supreme Court held that a circuit court had jurisdiction to enjoin an election to determine the county seat of Russell County because the ordinance proposing the election violated a provision of the Alabama Code. The Alabama Supreme Court stated:
“It is suggested by appellants that if the election is void or voidable it can be tested by other proceedings after the election, and that there is no occasion for an injunction. We think this is not an adequate remedy. It means the useless incurring of all the expense, loss of time, and inconvenience of holding the election, and the confusion and uncertainty which would follow such conditions.
[[Image here]]
“... An election under such conditions would be a mere straw vote, having no legal effect if attacked in a proper proceeding by proper parties. All the expense and inconvenience to the voters and taxpayers of the county would be useless. It seems a plain duty to so determine beforehand. The rights and interests of the electorate are better promoted by a decision in advance, advising the commissioners of their want of power, and restraining them from proceeding with a meaningless and useless election.”
212 Ala. at 453, 103 So. at 62. This Court further stated in Gibbs v. Cochran, 281 Ala. 22, 25, 198 So.2d 607, 608-09 (1967):
“We have said that controversies touching the legality of acts of public officials or public agencies challenged by parties whose interests are adversely affected is one of the favored fields for declaratory judgment.
‘We construe the bill of complaint as showing that the interests of complainants, appellees, are adversely affected by Rule 23 [of the Board of Pharmacy], although there is no allegation that the Board or any other agency or official had instituted proceedings against them wherein they are charged with a violation of said rule. Complainants were not compelled to wait for such action to be taken against them before instituting this proceeding.
“The bill of complaint, in our opinion, shows such an actual justiciable controversy as to support the jurisdiction of the trial court for a declaratory judgment.”
(Citations omitted.) This Court further stated in Scott v. Alabama State Bridge Corp., 233 Ala. 12, 17, 169 So. 273, 277 (1936):
“Controversies touching the legality of the acts of public officials, or public agencies, challenged by parties whose interests are adversely affected, is one of the favored fields for such declaratory judgment, styled in the act and in the authorities, the ‘declaration.’ Official action, done or threatened, challenged as unlawful, a usurpation of official power, whether lack of authority appears in the terms of the statutes, or because of unconstitutionality thereof, are said to be determinable in this manner rather than force the parties to seek injunctive relief, which involves many questions going to the propriety of such relief.”
(Emphasis added.)
In this case, the Board challenges the actions of the electors in submitting the petition proposing the ordinance to the probate judge for certification and the jurisdiction of the probate court to review and certify that petition. The electors and the probate judge undertook these actions pursuant to the authority purportedly granted them by Act No. 294. Their actions threaten to adversely affect the Board. We see no logic in requiring the Board to wait for the probate judge to *763 submit the proposed ordinance to the Birmingham City Council or for the results of a referendum election before allowing the proposed ordinance or the application of Act No. 294 to the City of Birmingham to be challenged. We conclude that, in light of the nature of a declaratory-judgment action and the relief sought, the Board alleged an existing controversy in its complaint.
We next address the electors’ argument that the circuit court lacked subject-matter jurisdiction over this action because, they argue, Act No. 294 has statutorily limited the circuit court’s general jurisdiction by granting the probate court jurisdiction over all disputes regarding ordinances proposed under that act. We disagree.
The Alabama Constitution grants the circuit courts of this state general jurisdiction over all cases except as may be limited by law. See Amend. No. 328, § 6.04, Ala. Const.1901. Act No. 294 grants the probate court the authority only to determine whether any petition submitted under that act is signed by the required number of qualified electors. This limited grant of authority to the probate court does not divest the circuit court of general subject-matter jurisdiction, nor does this limited grant of authority allow the probate court general jurisdiction over all disputes involving a petition submitted under Act No. 294. Thus, the electors have pointed us to no statutory limitation, and we know of no statutory limitation, on the circuit court’s general jurisdiction in this case. Therefore, the circuit court had subject-matter jurisdiction of this action.
Finally, the electors argue that the circuit court lacked jurisdiction to grant declaratory relief because, they argue, all interested persons or entities had not been made parties, as required by § 6-6-227, Ala.Code 1975. The electors argue that the members of the Birmingham City Council as well as the voters of the City of Birmingham have an interest in ordinances proposed under Act No. 294, that those interested parties were not parties to the Board’s declaratory-judgment action, and that, therefore, the circuit court lacked jurisdiction over the Board’s action.
This argument is meritless. The Board, which vigorously opposed certification of the proposed ordinance and which would be adversely impacted by such certification, appeared before the circuit court. Judge Bolin, who indicated his intent to certify the petition, also appeared before the circuit court. The electors, who vigorously supported certification of the proposed ordinance and who stood to benefit from that certification, intervened in the circuit court action; thus, they appeared before the circuit court. Finally, the City of Birmingham, the municipality that would be affected by the proposed ordinance, also intervened and thus was present to protect the interests of the City. We believe that all necessary parties were present.
The electors argue that the Birmingham City Council and the voters of the City of Birmingham were interested parties because the council and the voters have an interest in any legislation affecting the City that is proposed by a citizen. This may be true. However, the absence of a party who has an interest in the litigation but who is not a necessary party does not destroy jurisdiction. See Board of Trustees of Employees’ Retirement Sys. v. Talley, 286 Ala. 661, 244 So.2d 791 (1971) (it is not fatal to a declaratory-judgment action to omit an interested person as a party, if that person’s presence is not necessary to a determination of the controversy between the parties who are before the court). Because the Board ini *764 tiated its declaratory-judgment action before the petition was certified and before the proposed ordinance was submitted to the Birmingham City Council for consideration, the Birmingham City Council was not a necessary party to the proceeding before the circuit court. If the Birmingham City Council wished to intervene in this action, it certainly had the option to seek to do so. This same rationale applies to the electors’ claim that the voters of the City of Birmingham are interested parties whose absence destroyed the circuit court’s jurisdiction. The fact that other parties might wish to propose a similar ordinance in the future does not eliminate the jurisdiction of the circuit court to resolve the dispute presented by the parties before it.

Standing

The Board had the necessary standing to bring its declaratory-judgment action. The Board alleged that the actions of the electors and the probate court, if not enjoined, would affect the Board’s operations, its existing contractual rights and relationships, and the rights of its employees.[4] As we recognized above, the ordinance, if adopted by the Birmingham City Council or enacted in a referendum, will clearly have an adverse effect on the Board. At the time the Board filed its complaint, the electors, acting under color of Act No. 294, had already obtained the signatures and submitted their petition and the invalid ordinance to the probate court. At the time the Board filed its complaint, the probate court had already acted under color of that act and reviewed the signatures and indicated its intent to certify and submit the proposed ordinance to the Birmingham City Council. Therefore, the Board has a “redressable injury” and a “right to be protected” in this action. See Ex parte Izundu, 568 So.2d 771, 772 (Ala.1990) (citing 59 Am.Jur.2d Parties § 31 (1987), and Eagerton v. Williams, 433 So.2d 436, 447 (Ala.1983)).
Additionally, this Court has recognized that “ ‘one has standing to bring his complaint into court if his stake in the resolution of that complaint assumes the proportions necessary to ensure that he will vigorously present his case.’ ” Ex parte Marshall Durbin & Co., 537 So.2d 496, 497 (Ala.1988) (quoting Smith v. Potts, 293 Ala. 419, 422, 304 So.2d 578, 580 (1974)). The Board’s interest in resolving this controversy — protecting its operations and its existing contractual rights and relationships, in addition to preventing an usurpation of its powers — is certainly of such proportions that it has vigorously presented, and will vigorously present, its case. The Board has the standing necessary to present its claims.
We conclude that the Board alleged an actual controversy, that the circuit court had jurisdiction to issue its declaratory judgment, that this dispute was filed in the proper court and that the proper parties were before the court. We also conclude that the Board had standing to assert its claims. We now address the substantive issues necessary to resolve this dispute.

Legality of the Proposed Ordinance

The Board argues that the proposed ordinance is invalid because, it argues, it unlawfully delegates to a special attorney the power of the City of Birming *765 ham; it improperly attempts to restructure the Board’s debts without the Board’s consent; it violates Act No. 55-452, Ala. Acts 1955, which authorized the mayor-council form of government in municipalities having a population of more than 200,-000; it misuses Act No. 294 for an improper purpose; it impairs the Board’s contractual obligations in violation of Art. I, § 22, Const. of Ala.1901; and it is over-broad and vague. (Board’s brief at 32-49.) In its order, the trial court held that the proposed ordinance unlawfully and unreasonably delegated the power of the City and that the City of Birmingham did not have the right to divest the Board of its indebtedness.
We agree that the proposed ordinance is invalid; we therefore agree with the trial court’s conclusion. However, our rationale for this conclusion is different from that of the trial court.
Municipalities of this State are authorized by § 11-50-230 et seq., Ala.Code 1975, to form public corporations for the purpose of operating a waterworks system. Section 11-50-235, Ala.Code 1975, specifies the powers that such public corporations shall have, once created. Section 11-50-235 provides, in pertinent part:
“(a) Each corporation formed under this division shall have the following powers together with all powers incidental thereto or necessary to the discharge thereof in corporate form:
“(1) To have succession by its corporate name for the duration of time (which may be in perpetuity) specified in its certificate of incorporation or until dissolved as provided in this division;
[[Image here]]
“(4) To acquire, purchase, construct, operate, maintain, enlarge, extend and improve any system or systems ... and to receive, acquire, take and hold, whether by purchase, gift, lease, devise or otherwise, real, personal and mixed property of any nature whatsoever that its board of directors may deem a necessary or convenient part of such system or systems;
“(5) To borrow money and to issue in evidence of the borrowing interest-bearing bonds payable solely from the revenues derived from the operation of ... its systems....
“(6) To pledge for payment of its bonds any revenues from which such bonds are made payable and to mortgage, pledge or otherwise convey the system or systems the revenues from which are so pledged;
“(7) To sell at wholesale all of any part of its water supply to any other corporation organized under the provisions of this division or to any municipality for distribution to the inhabitants thereof and the surrounding territory;
[[Image here]]
“(10) To lease, exchange, sell, convey and otherwise dispose of its real, personal and mixed property by any form of legal conveyance or transfer;
[[Image here]]
“(12) To appoint and employ such officers and agents, including attorneys, as its business may require ...
[[Image here]]
“(b) Any mortgage, deed of trust or pledge agreement made by such corporation may contain such agreements as the board of directors may deem advisable respecting the operation and maintenance of the property and the use of the revenues subject to such mortgage, deed of trust or pledge agreement and respecting the rights or duties of the parties to such instrument or the parties for *766 the benefit of whom such instrument is made; provided, that no such mortgage or deed of trust shall be subject to foreclosure.”
Significantly, § 11-50-234, Ala.Code 1975, provides that “[e]ach corporation formed under this division shall have a board of directors which shall constitute the governing body of the corporation.” Therefore, by statute, decisions regarding the issuance and sale of bonds by a waterworks system, as well as decisions regarding the operation of the waterworks system, must be under the control of the system’s board of directors.
Further, § 11-50-237 addresses the execution, sale, and refunding of bonds by a waterworks system, the application of the revenues obtained from the sale of those bonds, the vesting of title to the assets of the waterworks systems in the municipality, and the dissolution of the public corporation upon payment of the bonds. Section 11-50-237 provides:
“(a) All bonds issued by any corporation organized under this division shall be signed by the chairman of its board of directors or other chief executive officer and attested by its secretary, and the seal of such corporation shall be affixed thereto. Any interest coupons applicable to the bonds of such corporation shall be signed by the chairman of the board of directors or other chief executive officer, but a facsimile of such signature may be impressed on any such interest coupon in lieu of his manually signing the same. Any such bonds may be executed and delivered by such corporation at any time and from time to time, shall be in such form and denominations and of such tenor and maturities, shall contain such provisions not inconsistent with the provisions of this division and shall bear such rate or rates of interest payable and evidenced in such manner as may be provided by resolution of its board of directors. Any borrowing may be effected by sale of such bonds at either public or private sale in such manner and at such price or prices and at such time or times as may be determined by the board of directors of such corporation to be most advantageous. Any bonds issued by such corporation may thereafter at any time (whether before, at or after the maturity thereof) and from time to time be refunded by the issuance of refunding bonds, which may be sold by such corporation at public or private sale at such price or prices as may be determined by its board of directors to be most advantageous or which may be exchanged for the bonds to be refunded. ... All debts created and bonds issued by any such corporation shall be solely and exclusively an obligation of the corporation and shall not create an obligation or debt of any municipality. No municipality shall pledge its faith and credit for the payment of any debt incurred or bonds issued by such corporation.
“(b) When any such corporation shall have borrowed money and issued its bonds payable from the revenues of its systems, or either of them, it shall charge, collect and account for revenues from the operation of such system or systems sufficient to pay the principal of and the interest on said bonds as such principal and interest respectively mature, to pay the costs of operating and maintaining such system or systems and to create and maintain any reserves or special funds which may be provided for in the proceedings authorizing the issuance of the bonds. Any such corporation shall apply all such revenues in the manner and for the purposes provided for in such proceedings.
“(c) When the principal of and the interest on any bonds of such corpora *767 tion payable from the revenues derived from the operation of a system owned by such corporation shall have been paid in full, then such system shall thereupon become the property of the municipality which authorized the incorporation of such corporation, and title to said system shall thereupon immediately vest in such municipality. When title to all property owned by any corporation organized under the provisions of this division shall have vested in the municipality which authorized the incorporation thereof, then such corporation shall thereupon stand dissolved. The formation and dissolution of one or more corporations under the provisions of this division shall not prevent the subsequent formation hereunder of another corporation.”
(Emphasis added.) We read these Code sections to mandate that, so long as the corporation remains indebted on its bonds, the board of directors of the corporation remain in control of the waterworks system, see § 11-50-234, and to mandate that the board of directors determine the terms of any borrowing or issuance of bonds by the waterworks system. See § 11-50-237(a) (“Any such bonds ... shall be in such form and denominations and of such tenor and maturities, shall contain such provisions not inconsistent with the provisions of this division and shall bear such rate or rates of interest payable and evidenced in such manner as may be provided by resolution of its board of directors. Any borrowing may be effected by sale of such bonds ... in such manner and at such price or prices and at such time or times as may be determined by the board of directors of such corporation to be most advantageous. Any bonds issued by such corporation may thereafter at any time (whether before, at or after the maturity thereof) and from time to time be refunded by the issuance of refunding bonds, which may be sold by such corporation ... at such price or prices as may be determined by its board of directors .... ”).
We also read these Code sections to require that the board of directors remain in control of the assets of the public corporation and in control of the revenues generated by those assets until such time as the debts of the waterworks system are paid in full (see § 11-50-234 (requiring the board of directors to govern the public corporation) and § ll-50-237(b) (“When any such corporation shall have borrowed money and issued its bonds payable from the revenues of its systems, or either of them, it [the public corporation] shall charge, collect and account for revenues from the operation of such system or systems sufficient to pay the principal of and the interest on said bonds as such principal and interest respectively mature, to pay the costs of operating and maintaining such system or systems .... ”)).
The ordinance proposed to place David A. Sullivan, a special attorney, in control of the waterworks system. Thus, the ordinance proposed to transfer to Sullivan those powers that by virtue of § 11-50-230 et seq. have been squarely placed in the hands of the board of directors of the waterworks system. The proposed ordinance, submitted pursuant to Act No. 294, therefore, conflicted with § 11-50-230 et seq., Ala.Code 1975, and is therefore invalid. See Art. IV, § 89, Const. of Ala.1901 (“The legislature shall not have the power to authorize any municipal corporation to pass any laws inconsistent with the general laws of this state.”); § 11-45-1, Ala.Code 1975 (authorizing municipal corporations to adopt ordinances not inconsistent with state laws). See also City of Mobile v. Garrett-Montgomery, Inc., 281 Ala. 204, 201 So.2d 42 (1967) (holding that municipal ordinance that conflicted with statute was invalid because it violated § 89, Const, of *768 Ala.1901, and violated predecessor to § 11-45-1, Ala.Code 1975).

Conclusion

We conclude that the proposed ordinance conflicts with § 11-50-280 et seq., Ala.Code 1975. The ordinance as proposed, therefore, would be invalid if adopted by the Birmingham City Council or if enacted by referendum vote. We agree with the trial court that the proposed ordinance is invalid but for reasons different from those stated by the trial court. Our resolution of this issue preter-mits our consideration of all other issues raised on appeal.
AFFIRMED.
HOUSTON, SEE, LYONS, BROWN, JOHNSTONE, HARWOOD, and WOODALL, JJ., concur.

. David A. Sullivan is one of the attorneys representing the electors in this action.

. It is undisputed that Sullivan entered into an agreement with certain persons ("the cir-culators") who agreed to obtain signatures on *760 the petition in exchange for a pro rata share of one-half percent of the total amount of bonds issued to refund the Board's indebtedness. Under the agreement, the circulator who obtained the highest number of valid signatures on the petition was to receive an additional bonus of $250,000.

. Pursuant to § 6-6-227, Ala.Code 1975, the Board served a copy of its declaratory-judgment complaint on the attorney general. The attorney general did not intervene in the circuit court action. However, on appeal to this Court, the attorney general filed a motion for leave to file an amicus curiae brief in support of the Board, which we granted.

. The Board also alleged in its declaratory-judgment complaint that the actions of the electors and the probate court (i.e., the certification of the petition and the submission of the allegedly invalid and unconstitutional ordinance to the Birmingham City Council for adoption or for a vote), taken pursuant to an act that no longer has application to the City, threatened public confusion and irreparable injury to the proper functioning of the electoral process.