KENNEDY, Justice.
This appeal involves the June 2, 1998, Democratic Party primary election for the Alabama House of Representatives, District 56. On June 8, 1998, the Alabama Democratic Party certified the results of the primary election and declared Priscilla Dunn the winner by a two-vote margin over the incumbent, Lawrence McAdory. On June 9, 1998, pursuant to § 17-16-70, Ala.Code 1975, McAdory filed a “Statement of Contest” with the Alabama Democratic Party. One day later, on June 10, 1998, McAdory supplemented his Statement of Contest in order to comply with the internal filing procedure of the Democratic Party.
On August 6, 1998, a subcommittee of the State Democratic Executive Committee issued a ruling “dismissing and denying” the contest filed by McAdory. In its order, the subcommittee held that MeAdor/s supplement to his Statement of Contest was untimely and it explained its decision to exclude certain evidence proffered by McAdory’s attorney.
Under Article VIII, § 2(h), of the “Constitution, Bylaws and Rules” of the Alabama Democratic Party, McAdory appealed the subcommittee’s decision to the State Democratic Executive Committee. In a letter dated September 1,1998, McAdory requested an expedited review of his appeal and notified the chairman and executive director of the Democratic Party that he would seek judicial relief if a decision had not been reached by the close of business on September 14, 1998. On September 15, 1998, while his appeal to the State Democratic Executive Committee was still pending, McAdory filed a complaint in the Circuit Court of Jefferson County seeking declaratory and injunctive relief. McAdory’s appeal to the Executive Committee of the State Democratic Party was subsequently denied.
On September 22,1998, the trial court held a hearing on motions to dismiss filed by the Alabama Democratic Party (the “Party”) and the defendant-intervenor Priscilla Dunn. On *311 September 24, 1998, the trial court granted the defendants’ motions and dismissed McA-dory’s complaint for lack of jurisdiction. This appeal of the trial court’s ruling followed.
As noted by the trial court in its order, “the Legislature has given the handling of political party nominations to the several political parties.” Section 17-15-6, Ala.Code 1975,- states that the courts shall have no jurisdiction to “entertain any proceeding for ascertaining the legality, conduct or results of any election, except so far as authority to do so shall be specially and specifically enumerated and set down by statute.” Consistent with this mandate, § 17-16-87, Ala.Code 1975, indicates that the state executive committee of the appropriate party “shall be the court of final appeal in all party contests of nominations.” Election challenges are strictly statutory, and this Court has consistently recognized the Legislature’s intent in empowering the political parties to settle primary election disputes. Ex Parte Baxley, 496 So.2d 688, 693 (Ala.1986).
McAdory acknowledges the jurisdictional limitations created by § 17-15-6, but argues that the statute does not preclude the jurisdiction of the courts where the controlling political party fails to follow the mandates of the law in conducting primary-election contests. Specifically, McAdory contends that the State Democratic Executive Committee (1) unlawfully refused to consider legitimate evidence and (2) incorrectly held the supplement to his Statement of Contest to be untimely. Based on this, McAdory argues that the Party abdicated its responsibility to hear the primary-election contest, thereby placing jurisdiction with the trial court. The Party argues that the Executive Committee fully complied with the statutory requirements and correctly decided not to consider evidence that was acquired through a unilateral violation of the principles establishing the secrecy of the ballot.
In its order the Party stated the following, in pertinent part:
“Algert S. Agricola, as attorney for Lawrence McAdory and without authority of this committee or a court of law obtained the absentee ballots in this election, opened the ballots, matched the ballots with the voters list kept by the poll workers and learned how those eitizens voted. From those voting for Priscilla Dunn, Al-gert S. Agricola compiled a list of citizens whose votes he contended should not have been counted. He submitted no potentially illegal votes cast for his client, Lawrence McAdory. It is undisputed that the identity of the voters who Algert S. Agrícola contended might not be qualified to vote in this race could have been ascertained without him, ex parte ascertaining how these persons voted. The only purpose for ascertaining the way the persons voting absentee voted was to avoid subpoenaing or raising a question about voters who voted for Lawrence McAdory. The committee believes in the right of voters to have a secret ballot which Algert S. Agrícola, the attorney for Lawrence McAdory disputes. Nevertheless, it is the ruling of this committee that the right of our citizens to a secret ballot shall remain inviolate in the Democratic Primary until an election is contested and a committee duly appointed to hear such matter or a court hearing such matter declares a vote illegal. Then and only then shall anyone be allowed to ascertain how a citizen voted. Having violated this principle of citizens of Alabama having the right to a secret ballot until a ruling is made that such vote is illegal, it was the decision of this committee that Lawrence McAdory not be allowed to use or to introduce evidence as to any person whose ballot Algert S. Agricola inspected and matched by number with the voters list maintained at the polls....”
In response, -McAdory argues that he was authorized by statute to subpoena, examine, and match the voter lists, absentee affidavits, and absentee ballots. Section 17-16-84, Ala. Code 1975, states that the clerk of the circuit court shall issue any subpoenas or orders for the production of documents that are required by either party in an election contest; however, such a subpoena, and the language of § 17-16-84, cannot be read to allow the type of ex parte examination that occurred in this case. Although the language of § 17-16-84 allows a party to a primary-election *312 contest to subpoena a wide range of documents, the statute does not act independently of the other sections in Title 17, Chapter 16, that place detailed restrictions on when and how the examination of ballots can occur.
Section 17-16-25, Ala.Code 1975, codifies the principle that “[t]he ballot of every voter shall be kept secret and inviolate.” Recognizing the need for an exception to this rule where the sanctity of the ballot has been called into question, but mindful of the fact that the secret ballot is the hallmark of democracy, the Legislature specified that sealed ballot records could be opened as part of a primary-election contest, but only by the chairman of the county executive committee in the presence of the contest committee. § 17-16-25, Ala.Code 1975. Consistent with this requirement, § 17-16-33 states that a ballot box shall not be opened except “[i]n the event of a contest, where the opening of the box has been authorized under authority of the chairman of the executive committee trying the contest.”
Primary-election contests must be run within the rules laid down by the Legislature. “If the committee or the chairman fail or refuse to follow the mandates of the statutes, the only recourse of either the contestant or the contestee is to the courts. In such cases, the courts are open.” Perloff v. Edington, 293 Ala. 277, 281, 302 So.2d 92, 96 (1974). However, this is not such a case. The Democratic Executive Committee did not abuse its discretion by excluding all evidence that was obtained in violation of both § 17-16-24 and the fundamental principles relating to the secrecy of the ballot. The decision of the subcommittee is supported by the fact that McAdory presented no admissible evidence to support his contest, and we find no merit to McAdory’s claim that the Democratic Executive Committee violated the statutory requirements for conducting this primary-election contest.[1] Based on this and on the mandate of § 17-15-6, we affirm the trial court’s ruling dismissing McAdory’s complaint for lack of jurisdiction.[2]
AFFIRMED.
ALMON and SHORES, JJ., concur.
HOOPER, C.J., and MADDOX, HOUSTON, SEE, and LYONS, JJ., concur in the result.

. McAdory also challenges the subcommittee's finding that the supplement to his Statement of Contest was untimely. However, discussion of this issue is pretermitted, because the subcommittee chose to hear McAdory’s contest and its judgment is fully supported by McAdory’s failure to present any admissible evidence to support his claims.

. In his special writing, the Chief Justice criticizes the Executive Committee of the Democratic Party for following the strict mandates of the law and enforcing well-established procedural requirements. While noting the legal correctness of the Party’s decision, the Chief Justice makes it clear that he believes the Executive Committee should have ignored these requirements and taken a more activist role in hearing this case. Applying the logic suggested by the Chief Justice, one could accuse all courts of showing little concern for the merits of the numerous disturbing cases that are dismissed or affirmed for procedural reasons.
Presumably relying on McAdory’s allegations as if they had been verified through testimony and tested in a judicial proceeding, the Chief Justice ignores the fact that McAdory's attorney violated the procedures established by §§ 17-16-25 and -33 and chose to review for irregularities only those ballots cast in favor of McAdory’s opponent. Even if this Court ignored the limits of its judicial function and assumed that McAdo-ry’s allegations were correct, it would be presumptuous to assume that the board of registrars’ failure to remove the names of certain unqualified voters was an isolated event and that no convicted felons or other unqualified voters cast ballots for Lawrence McAdory. In short, although the prospect that unqualified voters could be participating in our state elections is disconcerting, it is simply not relevant to any nonpartisan discussion of the issues before this Court.