William Earl Roper and Cynthia Lanell Roper appeal from a judgment of the Crenshaw Circuit Court dismissing the Ropers' action against Ronald A. Rhodes; James V. Perdue, in his official capacity as probate judge of Crenshaw County; and Beth Chapman, in her official capacity as secretary of state of Alabama.[1] We dismiss the appeal.
 Facts and Procedural History
William Earl Roper served on the Crenshaw County Board of Education, district 1, until 2006. Rhodes and one other candidate challenged William for that office in the June 6, 2006, Democratic primary. Following the primary election, William and Rhodes participated in a runoff election on July 18, 2006. William and Rhodes received an equal number of votes in the runoff election. To break the tie, the chairman of the Crenshaw County Democratic party conducted a "domino draw," and Rhodes prevailed. See § 17-13-21 (formerly § 17-16-39), Ala. Code 1975. On August 14, 2006, Rhodes was certified as the nominee for the Democratic party.
On October 30, 2006 — eight days before the November 7, 2006, general election — William and Cynthia filed an action in the Crenshaw Circuit Court against Rhodes, Judge Perdue, and the secretary of state. The complaint alleged that, during the time leading to the primary and runoff elections, Rhodes had violated certain reporting provisions of the Fair Campaign Practices Act, § 17-22A-1 et seq., Ala. Code 1975 ("the FCPA").[2] Although it *Page 473 
asserted different theories, [3] the complaint sought two basic forms of relief: the revocation of Rhodes's certificate of nomination and the removal of his name from the ballot for the general election. The Ropers also filed a petition asking the trial court to issue an injunction postponing the November 7, 2006, election for the office of Crenshaw County Board of Education, district 1, or, in the alternative, prohibiting the certification of the election results for that office pending the outcome of this case.
Rhodes filed a motion to dismiss the complaint. Among other things, Rhodes asserted that the Ropers' action was untimely filed and that the trial court did not have subject-matter jurisdiction. The trial court held a hearing on November 6, 2006, to consider the Ropers' petition for an injunction postponing the election for the board-of-education office or prohibiting the certification of the election results for that office.
At the November 6, 2006, hearing, the trial court initially denied Rhodes's motion to dismiss and proceeded to hear testimony. On November 14, 2006, the trial court entered an order holding that the Ropers' action was an election contest, which had been untimely filed, and the trial court therefore denied all the Ropers' claims for relief.[4] The Ropers appealed to this Court.
 Standard of Review "`[B]ecause the underlying facts are not disputed and this appeal focuses on the application of the law to those facts, there can be no presumption of correctness accorded to the trial court's ruling.' Beavers v. County of Walker, 645 So.2d 1365, 1373 (Ala. 1994) (citing First Nat'l Bank of Mobile v. Duekuxyrth, 502 So.2d 709 (Ala. 1987)). Appellate review of a ruling on a question of law is de novo. See Rogers Found. Repair, Inc. v. Powell 748 So.2d 869 (Ala. 1999); Ex parte Graham, 702 So.2d 1215 (Ala. 1997)."
Ex parte Forrester, 914 So.2d 855, 858 (Ala. 2005).
 Discussion
The Ropers' claims for relief are based on allegations that Rhodes failed to file reports required to be filed under the FCPA. Specifically, the Ropers alleged that, before theprimary and runoff elections, Rhodes had not filed the reports described in § 17-22A-8 of the FCPA.[5] *Page 474 
Relying primarily on Harvey v. City of Oneonta,715 So.2d 779 (Ala. 1998), and the authorities cited therein, the appellees argue that the trial court did not have subject-matter jurisdiction to address the Ropers' claims that Rhodes had violated provisions of the FCPA. We agree.
In Harvey, Mattie Harvey, a candidate for place number 3 on the Oneonta City Council, filed an action alleging that her opponent, Glen Whited, had not complied with the FCPA and seeking declaratory and injunctive relief. 715 So.2d at 779. It was undisputed that Whited had failed to file a statement required by the FCPA before the election, and Harvey sought a declaration that Whited had not complied with the FCPA and an injunction preventing the certification of Whited as the winner.[6] 715 So.2d at 779-80. Holding that the circuit court did not have jurisdiction to hear the action, this Court dismissed Harvey's appeal. 715 So.2d at 779.
This Court held that, instead of an action seeking declaratory and injunctive relief, Harvey should have filed an election contest under § 11-46-69, Ala. Code 1975, which sets forth the time limitation and the grounds for filing a contest to a municipal election. The Court first examined § 17-15-6, Ala. Code 1975, which stated:
 "`No jurisdiction exists [in] or shall be exercised by any judge, court or officer exercising chancery powers to entertain any proceeding for ascertaining the legality, conduct or results of any election, except so far as authority to do so shall be specially and specifically enumerated and set down by statute; and any injunction, process or order
from any judge, court or officer in the exercise of chancery powers, whereby the results of any election are sought to be inquired into, questioned or affected, or whereby any certificate of election is sought to be inquired into or questioned, save as may be specially and specifically enumerated and set down by statute, shall be null and void and shall not be enforced by any officer or obeyed by any person; and should any judge or other officer hereafter undertake to fine or in any wise deal with any person for disobeying any such prohibited injunction, process or order, such attempt shall be null and void, and an appeal shall lie forthwith therefrom to the supreme *Page 475 
court then sitting, or next to sit, without bond, and such proceedings shall be suspended by force of such appeal; and the notice to be given of such appeal shall be 14 days.'"
715 So.2d at 779 (emphasis added in Harvey). On the authority of Davis v. Reynolds, 592 So.2d 546
(Ala. 1991), this Court in Harvey noted that "a candidate who does not file a statement or report required by the FCPA before the election in question is ineligible to be elected to the office at that election." Harvey,715 So.2d at 780. Consequently, "[a]ny challenge to Whited's election on that basis [i.e., Whited's failure to file an FCPA-required statement] should have been filed as an election contest pursuant to § 11-46-69(a)(2)." 715 So.2d at 780-81. Because Harvey had not filed an election contest in compliance with § 11-46-69, the circuit court did not have jurisdiction to hear Harvey's claims. 715 So.2d at 781. This Court held that the judgment of the circuit court was void and dismissed the appeal. 715 So.2d at 781.
Although the secretary of state and Judge Perdue discussHarvey in their briefs to this Court, the Ropers do not address it. The Ropers maintain that their action isnot an election contest and that, therefore, it is not subject to the statutory requirements — such as time limitations — for bringing an election contest. Instead, they contend, it is a pre-election action (i.e., an action filed before the general election) seeking to enforce § 17-22A-21, Ala. Code 1975, which states:
 "A certificate of election or nomination shall not be issued to any person elected or nominated to state or local office who shall fail to file any statement or report required by this chapter. A certificate of election or nomination already issued to any person elected or nominated to state or county office who fails to file any statement or report required by this chapter shall be revoked."
The Ropers argue that this Court has jurisdiction to enforce the "unambiguous and clear" language of § 17-22A-21. (Ropers' reply brief, p. 7.) The Ropers note that they filed their action before the general election, and they contend that rather than contesting an election, they were seeking to prevent Rhodes's name from appearing on the ballot for the November 7, 2006, election. The Ropers cite Megginson v.Turner, 565 So.2d 247 (Ala. 1990), [7] to support their assertion that "[t]he remedy provided in the [FCPA] — revocation of the certificate of election — is mandatory and requires the removal of the offending candidate's name from the ballot." (Ropers' reply brief, p. 5.)
The section of the FCPA on which the Ropers rely — § 17-22A-21 — requires the forfeiture of an election under certain circumstances by a candidate who fails to file a statement or a report required by the FCPA. The fundamental problem with the Ropers' reliance on § 17-22A-21, however, is that they fail to place § 17-22A-21 in the context of the entire statutory scheme established by the legislature in Title 17. Moreover, the Ropers misapprehend this Court's decision in Davis v. Reynolds, 592 So.2d 546
(Ala. 1991).
In Davis, this Court examined § 17-22A-21 within the context of the FCPA and noted:
 "The [FCPA] was enacted by the Legislature in 1988. Its primary laudable purpose was to require candidates for public office in Alabama to disclose campaign contributions and expenditures *Page 476 
prior to elections. It repealed parts of the Corrupt Practices Act, § 17-22-1 et seq., which required disclosure only after the election. To accomplish this purpose, the legislature included sanctions for violation of the statute. For a failure to file a statement required by the statute prior to the election, § 17-22A-21 provides the harshest penalty of all:
 "`A certificate of election or nomination shall not be issued to any person elected or nominated to state or local office who shall fail to file any statement or report required by this Chapter.'
 "Thus, any candidate who fails to file a statement that is required to be filed by the [FCPA], prior to the election for the purpose of informing the voting public of the sources of his contributions and the subject of his expenditures, shall forfeit the election.
 "For the candidate who does not fail to file a statement before the election, but who files such a statement late, § 17-22A-22(b) prescribes and applies punishment in the form of a criminal penalty.
 "These two distinct sanctions, forfeiture of the election for those candidates who fail to file the disclosure statements required by the statute prior to the election, and criminal fines for candidates who file such disclosure statements prior to the election but not within the time prescribed by the statute, carry out the legislative intent of full disclosure before the election; but these sanctions do not require a candidate who discloses his contributions and expenditures before the election (but not within the time provided by the statute) to forfeit the election. That sanction is too harsh to visit upon a candidate who has not failed to file the statements required, but has merely filed them late. After all, this candidate is the candidate chosen by the people as their representative, even though his disclosure statement was filed untimely. The people's choice should prevail even if the candidate is in violation of the time constraints of the statute, if he files his disclosure statements prior to the election.
 "A fair reading of the [FCPA] leads one inescapably to the conclusion that the Legislature made a clear distinction between penalties that would apply to those candidates who fail to file disclosure statements and those candidates who merely file them late. It is not surprising that it did so. It was designed to differ from the Corrupt Practices Act, which provided only the harsh sanction of removal of the candidate's name from the ballot. The purpose of the [FCPA] is to aid the voting public in choosing its state and county officials. Its purpose is not to deny the voting public its choice of representative, even if he or she has failed to meet a statutory deadline for filing disclosure statements, so long as he or she nevertheless has filed the statements prior to the election.
 "The penal provisions of the [FCPA] have been addressed by this Court in only one case. In Megginson v. Turner, 565 So.2d 247
(Ala. 1990), this Court affirmed a trial court's ruling that Megginson could not be certified as the Democratic nominee because he had filed his statement naming his principal campaign committee more than five days after his announcement and declaration of candidacy. Megginson cited Jones v. Phillips, 279 Ala. 354, 185 So.2d 378 (1966); Owens v. Heartsill, 279 Ala. 359, 185 So.2d 382 (1966); Herndon v. Lee, 281 Ala. 61, 199 So.2d 74 (1967); and Kirksey v. Democratic Party of Alabama, 495 So.2d 638 (Ala. 1986), as authority for its holding. However, those *Page 477 
cited cases were decided under the Corrupt Practices Act, which did not provide the separate sanctions that the [FCPA] provides.
 "All candidates are, of course, subject to the five-day requirements of § 17-22A-4. If one fails to file a statement required by that section before the election, § 17-22A-21 applies the sanction: forfeiture of the election. If one files the statement required by § 17-22A-4 before the election, but not within the five days required by that section, § 17-22A-22(b) applies. To the extent that Megginson v. Turner, supra, holds to the contrary, it is overruled.
 "The [FCPA] marks a new day in Alabama campaign practices. It requires full and complete disclosure by all candidates for public office of the sources of all contributions and the subject of all expenditures. It requires this disclosure prior to the election. If it is not made before the election, the candidate may not be certified to the office if he wins the election, § 17-22A-21. It requires this disclosure shortly after one becomes a candidate. If it is not made within the time required, but before the election, the candidate is subject to the penalties provided by § 17-22A-22(b). Its purpose is to inform the voting public of the source of a candidate's financial support. This purpose is served by the sanctions provided for in the Act. This Court has no authority to enlarge the sanctions provided for in the legislation itself."
592 So.2d at 555-56 (footnote omitted).
In the present case, the Ropers filed their action on October 30, 2006 — more than two months after Rhodes had been certified as the winner of the runoff election. As noted, the Ropers' action was based on Rhodes's alleged failure to file reports required to be filed by the FCPA.
Because of Rhodes's alleged failure to file the reports required by the FCPA, the Ropers argued that Rhodes was ineligible to be elected in the general election.
The Ropers did not argue expressly that Rhodes's alleged failure to file the FCPA reports also made him ineligible to be elected in the primary or runoff elections. However, the Ropers' allegations necessarily lead to the conclusion that if Rhodes failed to file reports required to be filed by the FCPA before the primary and runoff elections, he was ineligible to participate in those elections. Consequently, to the extent the Ropers alleged FCPA violations occurring before the primary and runoff elections, the Ropers are actually claiming that Rhodes was ineligible to participate in those elections. In that regard, the Ropers' claim is an attempt to contest the primary and runoff elections, because if the Ropers prevailed in their attempt to have Rhodes removed from the general election ballot on the basis of alleged FCPA violations that occurred before the primary and runoff elections, the results of the primary and runoff elections would be affected — indeed they would be negated.
As the Court noted in Harvey, § 17-15-6 prohibits a court from exercising jurisdiction over any proceeding seeking to
 "ascertain[] the legality, conduct or results of any election, except so far as authority to do so shall be specially and specifically enumerated and set down by statute; and any injunction, process or order from any judge, court or officer in the exercise of chancery powers, whereby the results of any election are sought to be inquired into, questioned or affected, or whereby any certificate of election is sought to be inquired into or questioned, save as may be specially and specifically enumerated and set down by statute, shall be null and void." *Page 478 
(Emphasis added.) See also Etheridge v. State ex rel.Olson, 730 So.2d 1179, 1182 (Ala. 1999) ("We note again, as we have done on previous occasions, that a court does nothave jurisdiction to interfere in an election result unless astatute authorizes it to do so. The Legislature has made this abundantly clear. See § 17-15-6." (emphasis added)). Under Harvey, supra, and Davis, supra, to the extent the Ropers alleged that Rhodes violated the FCPA before the primary and runoff elections, the Ropers were contesting those elections on the basis that Rhodes was allegedly ineligible to be a candidate in those elections. A procedure for contesting primary and runoff elections is set forth in §§ 17-16-70 through -89, Ala. Code 1975, and § 17-16-71(2) includes the ineligibility of a candidate as a ground for contesting a primary or runoff election. However, the Ropers did not follow the procedure outlined in §§ 17-16-70 through -89, Ala. Code 1975, and the Ropers have not cited another statutory provision authorizing their action to the extent it contested the primary and runoff elections on the basis that Rhodes was allegedly ineligible to be a candidate in those elections. Consequently, the trial court did not have jurisdiction to hear the Ropers' claims alleging FCPA violations by Rhodes that occurred before the primary and runoff elections. See also Dunning v. Reynolds,570 So.2d 668 (Ala. 1990); Ex parte Skidmore, 277 Ala. 221,168 So.2d 483 (1964).
In their materials filed with this Court, the Ropers suggest that Rhodes failed to file reports that the FCPA required to be filed before the general election, and they insist that that allegation entitles them to relief.[8] However, at the time they filed their action on October 30, 2006, the Ropers could not have obtained relief under § 17-22A-21 on a theory that Rhodes had failed to file a required report before the general election, because the general election had not yet occurred. At most, they could have alleged that Rhodes had failed to timely file an FCPA-required report. UnderDavis, supra, the penalty imposed by § 17-22A-21 does not apply to a candidate who has filed an untimely FCPA-required report, so long as that untimely report is filedbefore the election to which it applies. Instead, § 17-22A-21 applies only when a candidate does not
file a report before the election.
In any event, even if Rhodes did not file an FCPA-required report before the general election, the trial court did not have jurisdiction over the matter because the Ropers did not pursue an election contest in accordance with Chapter 15 of Title 17, Ala. Code 1975.
 "Under the holding in Davis v. Reynolds, [592 So.2d 546 (Ala. 1991)], a candidate who does not file a statement or report required by the FCPA before the election in question is ineligible to be elected to the office at that election. Any challenge to [Rhodes's] election on *Page 479 
that basis should have been filed as an election contest pursuant to [Chapter 15 of Title 17, Ala. Code 1975]. . . . [The Ropers] should have filed an election contest. [They] did not do so, and the circuit court did not have jurisdiction to entertain this action for [declaratory and injunctive] relief."
Harvey, 715 So.2d at 780-81.[9]
 Conclusion
The trial court did not have jurisdiction over the action. Thus, its judgment is void, and the Ropers' appeal is dismissed.
APPEAL DISMISSED.
COBB, C.J., and LYONS, WOODALL, STUART, and PARKER, JJ., concur.
SEE and BOLIN, JJ., concur specially.
MURDOCK, J., dissents.
[1] When the Ropers filed their complaint in this action, Nancy Worley was the secretary of state and was named as a defendant. Beth Chapman succeeded her in that office in January 2007. Rule 43(b), Ala. R.App. P., provides:
 "When a public officer is a party to an appeal or other proceeding in the appellate court in that officer's official capacity, and during its pendency dies, resigns, or otherwise ceases to hold office, the action shall not abate and the public officer's successor is automatically substituted as a party."
See also Rule 25(d)(1), Ala. R. Civ. P.
[2] Act No. 2006-570, Ala. Acts 2006, which took effect on January 1, 2007, reorganized and amended Title 17, Ala. Code 1975. Unless otherwise noted, all citations in this opinion are to the earlier version of Title 17, which was in effect at the time the present action was filed.
In Title 17, as revised by Act No. 2006-570, the FCPA is codified at § 17-5-1 et seq., Ala. Code 1975. The revised Title 17 is found in Volume 13A of the Code of Alabama; that volume includes a "Disposition Table" indicating the disposition of the sections found in Title 17 before the reorganization effected by Act No. 2006-570.
[3] The relief sought by the Ropers included a declaratory judgment, an injunction, a writ of mandamus, and a writ of quo warranto.
[4] The trial court also held that the secretary of state was not a proper party to the proceeding. On their notice of appeal, the Ropers listed the secretary of state as an appellee, and the secretary of state has filed a brief as an appellee in this Court. However, the Ropers have made no argument to this Court on the issue whether the secretary of state was a proper party, and they therefore have waived the issue. Beiersdoerfer v. Hilb, Rogal HamiltonCo., 953 So.2d 1196, 1206 (Ala. 2006) ("`Issues not argued in a party's brief are waived.'" (quoting Waddell Reed, Inc. v. United Investors Life Ins. Co.,875 So.2d 1143, 1167(Ala. 2003))).
[5] Section 17-22A-4 of the FCPA requires a candidate for office to file a statement with the secretary of state or the judge of probate, as provided in § 17-22A-9, showing, among other things, the names of the individuals serving as the principal campaign committee for the candidate. Section 17-22A-8 requires "[t]he treasurer of each principal campaign committee or other political committee" to file at designated times a report outlining the contributions to the candidate and the expenditures of the committee. The Ropers alleged that before the primary and runoff elections Rhodes had failed to file reports by the times set forth in § 17-22A-8(a), which provides:
 "The treasurer of each principal campaign committee or other political committee shall file with the Secretary of State or judge of probate, as designated in Section 17-22A-9, reports of contributions and expenditures at the following times in any year in which an election is held:
 "(1) Forty-five days before and between 10 and five days before the date of any election for which a political committee receives contributions or makes expenditures with a view toward influencing such election's result;
 "(2) Provided, however, that a report shall not be required except between five and 10 days before a run-off election."
Before the primary, Rhodes filed two documents entitled "Waiver of Report," which stated that Rhodes had not "reached the filing threshold amount [of $1,000 in contributions or expenditures] as set forth in the [FCPA]." See
§ 17-22A-2(1), (2), and (4). The Ropers contended that those statements were inaccurate and that Rhodes in fact had reached the filing threshold amount and therefore was subject to the reporting requirements of the FCPA.
[6] The decision in Harvey does not state directly whether Harvey filed her complaint before the election occurred. However, because she sought an injunction preventing the certification of Whited as the winner of the election, it appears that Harvey filed her complaint after the election but before the certification of Whited as the winner.715 So.2d at 779.
[7] Although the Ropers do not so note, Megginson
was overruled by this Court in Davis v. Reynolds,592 So.2d 546, 556 (Ala. 1991).
[8] See, e.g., Ropers' brief, p. 12 ("The Ropers sought a judgment declaring that Rhodes violated the [FCPA] by failing to file the required reports in connection with the primary, runoff, and general election[s]."); Ropers' reply brief, p. 7 ("Rhodes . . . failed on several occasions to file required reports under the [FCPA] . . . before the general election. . . .").
Rhodes disputes the Ropers' claim. The record shows that Rhodes initially filed a waiver before the general election. That waiver stated he had not reached the filing threshold amount under the FCPA and therefore was not subject to the FCPA.See supra note 5. However, Rhodes testified at the hearing the day before the general election that he would file an "amended" report before the end of that day. The Ropers have not pointed to any evidence suggesting that Rhodes failed to follow through on his plan to file an "amended" report.
[9] The Court noted in Bell v. Eagerton,908 So.2d 204, 206 (Ala. 2002):
 "[T]his Court identified an exception to § 17-15-6
in City of Adamsville [v. City of Birmingham, 495 So.2d 642 (Ala. 1986)]:
 "`This Court has held that these provisions [in § 17-15-6], which formerly appeared in the 1940 Code as Tit. 17, § 235, do not prevent the enjoining of an election. Dennis v. Prather, 212 Ala. 449, 103 So. 59 (1925). See also Birmingham Gas Co. v. City of Bessemer, 250 Ala. 137, 33 So.2d 475
(1947).'"
We recognized this exception to the jurisdictional limitation stated in former § 17-15-6 (currently § 17-16-44) in our recent decision in King v. Campbell, 988 So.2d 969
(Ala. 2007), in which we quoted the following from Dennisv. Prather, 212 Ala. 449, 103 So. 59 (1925):
 "`The general rule without question is that courts of equity will not interfere by injunction with the holding of elections political in character, nor take jurisdiction of a contest after the election is held. But this court is committed to the proposition that equity will interfere by injunction to restrain elections not authorized by law. It will also restrain the usurpation of office, or the assumption of functions of office where no lawful office exists.'"
988 So.2d at 977 (quoting Dennis, 212 Ala. at 452,103 So. at 61-62 (emphasis added in Dennis)). UnlikeKing, which involved a claim that the entire election was void because the challenged office filled at that election was unconstitutional, the present case involves a claim that, because of alleged violations of the FCPA, a particular candidate was ineligible to be a candidate for an otherwise valid office. Moreover, the Ropers do not argue that the Dennis exception applies in the present case.