BOLIN, Justice.
This is an expedited appeal and cross-appeal. Raymond C. Bryan, Rodney James, and Jonathon Thompkins appeal from a summary judgment in favor of Mike Hubbard and Gene Howard, upholding the Alabama Republican Party’s revocation of Bryan’s certificate of nomination as a candidate for judicial office. Howard cross-appeals, arguing that the summary judgment is not a final judgment. We affirm in case no. 1071590 and dismiss the cross-appeal in case no. 1071662.

Facts and Procedural History

On April 4, 2008, Bryan, a licensed attorney in Alabama residing in the Seventh Judicial Circuit, filed a candidate-qualifying form with the Alabama Republican Party formally declaring his intention to seek election to the office of circuit judge of the Seventh Judicial Circuit, place 4. The Seventh Judicial Circuit comprises *494 Calhoun and Cleburne Counties. James and Thompkins are registered voters who reside in the Seventh Judicial Circuit. Both James and Thompkins voted for Bryan in the Republican Party primary election. Hubbard is the chairman of the Alabama Republican Party executive committee. Howard is a registered voter who resides in the Seventh Judicial Circuit and who voted for Bryan’s opponent and the incumbent judge, Mannon Bankson, Jr., in the Republican Party primary election.
Bryan and Bankson were certified to the secretary of state’s office as candidates for the office of circuit judge of the Seventh Judicial Circuit by the Alabama Republican Party for placement on the ballot for the primary election set for June 3, 2008. Both names appeared on the Republican Party primary-election ballot. No candidate qualified to run for the judgeship in the Democratic Party primary election.
On May 29, 2008, five days before the primary election, Bryan mailed to the secretary of state’s office by certified mail, return receipt requested, his pre-election report of campaign contributions and expenditures required by the Fair Campaign Practices Act, § 17-5-1 et seq., AIa.Code 1975 (hereinafter “the FCPA”). Bryan’s report arrived at the United States post office in Montgomery at 5:14 a.m. on Monday, June 2, 2008. June 2, 2008, was a state holiday, and no one from the secretary of state’s office retrieved the mail from the post office that day. Bryan’s report was delivered to the secretary of state’s office at 7:42 a.m. on June 3, 2008. Bryan’s report was posted on the secretary of state’s Web site later that same day.
On June 13, 2008, Hubbard, as chairman of the Alabama Republican Party executive committee, certified the vote totals from the June 3, 2008, Republican primary election: Bryan received 3,051 votes and Bankson received 2,838 votes. On that same day, Bankson wrote a letter to Hubbard, which stated:
“Please accept this correspondence as a contest of the June 3, 2008 Republican Primary Election held in Calhoun and Cleburne Counties for the position of Circuit Judge, Place 4. I wish to contest the election and the Republican nomination of candidate Raymond C. Bryan, and his position on the ballot as the candidate for November General Election. I contend and aver that due to Mr. Bryan’s willful failure to comply with the Fair Campaign Practices Act in this election therefore renders him ineligible to be a candidate for this position. Furthermore, I contend that his failure to comply is compounded by the fact that in Mr. Bryan’s previous election, he failed to also comply with the Fair Campaign Practices Act.”
Bryan received a telephone call from someone in Hubbard’s office, informing him of the receipt by the Alabama Republican Party of Bankson’s statement of election contest. Bryan responded to the telephone call by sending a letter to Hubbard on June 16, 2008. That letter stated:
“This letter is in response to the election challenge filed by Mannon Bankson to my victory over him in the June 3rd primary. Mr. Bankson contends the Party should not issue a certificate of election to me due to my alleged ‘... willful failure to comply with the Fair Campaign Practices Act (FCPA) in this election.’
“I strongly deny that I have willfully failed to comply with any requirement of the FCPA and have filed all reports required by the Act. The following is the time line of reports mailed to the Secretary of State by certified mail/return receipt requested with copies of supporting documents attached:
*495 “1). April 7, 2008 — Appointment Of Principal Campaign Committee.
“2). April 19, 2008 — 45 day Candidate Pre-Election Report.
“3). May 29, 2008 — 10/5 day Candidate Pre-Election Report.[1] Attached are receipts showing date/time stamp of this report being posted at the Anniston Post Office on Thursday, May 29, 2008, at 02:07:40 PM. When the report had not posted to the Secretary of State’s web site by Tuesday morning, June 3rd, I contacted the Election’s Division of the Secretary of State. I was informed they were not in possession of this report. I then used the United States Postal Service tracking service to trace the report having arrived at the Montgomery Post Office on Monday, June 2nd at 05:14 AM (June 2nd was a State holiday for Jefferson Davis’ birthday.) The tracking service showed the report was delivered to the Secretary of State Tuesday, June 3rd at 07:42 AM. After contacting the Secretary of State with this information a search was conducted within the Secretary of State’s office and it was discovered the report had been erroneously delivered to the Corporation’s division of that office. I was informed the report would be immediately scanned into the system for posting to the web site.
“I learned at the time that I was trying to trace the 10/5 day Report that the Secretary of State had a deadline for certified mail of this report to be May 27th. I honestly did not know the deadline for mailing this report was different than the actual deadline when the report was due on May 29th. Had I known, I would most certainly have mailed the report on the 27th or driven the report to the Secretary of States’ office that Thursday for filing. At the time I mailed the report I believed mailing by certified mail was effective on the date it was mailed just as it is done in the law by the Rules of Civil Procedure and as is done when mailing tax returns.
“Mr. Bankson requests the Republican Party disqualify me from being the Republican candidate for election in the November General Election due to the 10/5 day report having been tardy in mailing. The Alabama Supreme Court has spoken to the issue of a campaign report having been late in filing as opposed to not having been filed at all pursuant to the FCPA. So long as the untimely report is filed before the election to which it applies the law is that an untimely filed FCPA-required report does not impose the harsh penalty of disqualifying the candidate pursuant to Ala.Code § 17-22A-21. Instead, there may be criminal penalties for failing to file the report timely pursuant to Ala. Code § 17-22A-22(b). See, Davis vs. Reynolds, 592 So.2d 546 (Ala.1991).
“I contend that my election should stand as it is undisputed that the 10/5 day ‘Candidate Pre-Election Report’ was mailed by certified mail five (5) days before the election and would have been received by the Secretary of State no later than Monday, June 2nd, had there not been a state holiday for Jefferson Davis’ birthday. To deny the popular vote of the people of Calhoun and Cle-burne County of my election over Man-non Bankson due to the state having been on holiday would be a severe injustice and unconstitutional. I pray the leaders of our Party will not grant Mr. Bankson what he could not win by popular election and certify me as the Repub- *496 liean party candidate for election in the November general election for Circuit Judge in the 7th Circuit Place 4.
“Due to Mr. Bankson having raised a prior election in which I was a candidate, although it should have no bearing on the decision of the Steering Committee in this matter, I feel I should speak to the matter. My opponent raises as purported evidence of my willfulness in not complying with the requirements of the FCPA in missing the certified mail deadline that I did not close out my campaign account in another election in which I ran in 2006. I lost that election and it has no relation to the present election which I won on June 3, 2008. However, I would point out for my opponent’s sake that he also ran for election in 1998 and lost. He also did not close out his campaign account or file annual reports after the 1999 annual report reflecting a balance in his campaign account of $1,720.25. Having not filed an annual report since January, 1999, on January 81, 2008, Mr. Bankson filed a waiver with the Secretary of State that reflected a zero balance in the 1998 campaign account. This was done without there being any previous report having been filed explaining what Mr. Bankson did with the campaign contributions that had been present in his account in 1999 and which no longer exist. The disappearance of these campaign funds is a violation of the FCPA. This violation is compounded by the fact that all receipts of funds to Mr. Bankson’s campaign accounts in the 1998 election were from contributors to his campaign and there were no personal loans made by Mr. Bankson to his campaign account. Thank you for considering my defense in this matter and [I] trust the Republican Party will proudly uphold my election.”
On June 20, 2008, the steering/candidate committee of the Alabama Republican Party met in Birmingham. The minutes of that meeting state, in pertinent part, as follows:
“The Chairman then called the Steering Committee into session as the Candidate Committee of the Alabama Republican Party. The first discussion was the matter of Mannon G. Bankson, Jr. and Raymond C. Bryan. Raymond C. Bryan won the primary election for Circuit Judge, Place 4 in Cleburne and Calhoun Counties. Mr. Bankson contested the election stating that Mr. Bryan failed to comply with the Fair Campaign Practices Act, therefore making him ineligible to be a candidate for the position. Individuals [involved] in that dispute were asked to leave the room until the Committee reviewed the case. After review of the documents provided by Mr. Bankson and Mr. Bryan and reviewing the law governing elections, Bettye Fine Collins made a motion that the Committee directs the Chairman to decertify the election of Raymond C. Bryan, but to delay it until July [2], 2008. After discussion and a second, the motion carried. Elbert Peters voted no. Del Marsh abstained.”
On June 27, 2008, Bryan, James, and Thompkins (hereinafter referred to collectively as “the petitioners”) filed in the Circuit Court of Jefferson County, where Hubbard’s office is located, a petition for a writ of prohibition, mandamus, certiorari, or other appropriate extraordinary relief to preclude Hubbard, the probate judges in Calhoun and Cleburne Counties, and the secretary of state from preventing Bryan’s name from appearing on the November 4, 2008, general-election ballot. That same day, the petitioners also filed a motion for a preliminary injunction seeking to enjoin Hubbard from sending a letter to the secretary of state stating that the Alabama Republican Party was revoking Bryan’s *497 certificate of nomination. On June 30, 2008, Howard filed a motion to intervene in the action as a registered voter and a resident of the Seventh Judicial District, which the trial court granted. Howard asserted that Bryan failed to comply with the FCPA and that, therefore, the executive committee had a duty to revoke Bryan’s certificate of nomination. He also sought relief, in the alternative, from the secretary of state and the respective probate judges in the form of not placing Bryan’s name on the November 4, 2008, general-election ballot.
On June 30, 2008, the trial court held a hearing on the petitioners’ motion for a preliminary injunction. At the hearing, the parties stipulated to certain facts, including the fact that Hubbard did not conduct an election-contest proceeding as requested by Bankson, even though § 17-13-70, Ala.Code 1975, requires a hearing. The parties also stipulated that if Hubbard were to testify he would say that the reason the Alabama Republican Party revoked Bryan’s certificate of nomination was that, based on the filings by the parties, there was no dispute as to the facts, so there was no need to conduct an election-contest proceeding. At the hearing, it was agreed that Hubbard would not send the letter of revocation to the secretary of state’s office until July 7, 2008, in order to give the trial court time to review the submissions and to prepare and enter an order.
Also on June 30, 2008, Bankson filed additional materials with the Alabama Republican Party, supplementing his original letter of June 13, 2008, contesting the election, with an affidavit attesting to the truth of the facts set out in his original letter and offering to supply security for costs. When the hearing concluded on June 30, 2008, Hubbard filed a motion with the trial court, stating:
“Mike Hubbard, chairman of the Alabama Republican Party Executive Committee, hereby gives notice of the filing of an election contest by Mannon G. Bankson, Jr. on June 13, 2008. The statement challenges the nomination of Raymond C. Bryan to the position of Circuit Judge, Place 4, by the election results of the June 3, 2008 Republican primary election. A hearing on written materials submitted by both Mannon G. Bankson and Raymond C. Bryan was conducted on June 20.
“The matter is set for further hearing on July 2, 2008 and at such additional times as may be needed for a proper resolution of the matter. A copy of the Bankson filing is attached.... ”
On July 1, 2008, Bryan filed an objection with the Alabama Republican Party contesting the steering/candidate committee’s jurisdiction to hold a hearing on Bankson’s election contest because, he argued, under § 17-13-85, Ala.Code 1975, an election contest must be heard not less than 5 nor more than 10 days after the filing of the statement of election contest; therefore, he stated, the hearing had to have been held by June 23, 2008. That same day, the petitioners also filed a motion with the trial court, giving the court notice of Bryan’s filings contesting the steering/candidate committee’s election-contest hearing set for July 2, 2008.
On July 2, 2008, the steering/candidate committee of the Alabama Republican Party met again. The minutes from the meeting provide, in pertinent part, as follows:
“The duly called Candidate Committee meeting of the Alabama Republican Party was convened by Chairman Mike Hubbard at the headquarters of the Party in Birmingham, Alabama on July 2, 2008 at 3:08 PM. The roll was called by Secretary Sallie Bryant. In attendance were Ed Allen, Bill Armistead (by *498 phone), Martha Stokes (proxy for Pierce Boyd), Sallie Bryant, Bettye Fine Collins, Susan Filippeli (by phone), Mike Flicker, Mike Hubbard (by phone), Homer Jackson, Jerry Lathan (by phone), Bobbi Lou Leigh (by phone), Del Marsh, Elbert Peters (by phone), Greg Reed, Paul Reynolds (by phone), Harold Sachs, Kevin Speed, George Williams (by phone), and Bill Wood (by phone).
“The Chairman stated the purpose of the meeting was to hear the facts on the matter of Mannon G. Bankson, Jr. and Raymond C. Bryan. He turned control of the meeting over to Senior Vice Chairman Greg Reed. Mr. Reed stated parties in the matter had agreed A1 Agricola would recite the stipulation of facts. After his presentation of the stipulation of facts, Mr. Agricola spoke on behalf of Raymond C. Bryan, then Burt Jordan spoke on behalf of Mannon G. Bankson, Jr.
“After receipt of the documents related to the case, statements from both attorneys and oral statements from both candidates, Mr. Reed called the Candidate Committee into closed session. Control was returned to Chairman Hubbard. After discussion, Elbert Peters made a motion that the Candidate Committee finds that Mr. Bryan filed his 10-5 day report late. The motion failed due to the lack of a second. After further discussion, Jerry Lathan made a motion that the Committee affirms its decision made on June 20, 2008 disqualifying Mr. Bryan based on the facts of the case. After a second and discussion, the motion passed by a vote of 12 to 5. Those voting Aye were Bryant, Filippeli, Flicker, Hubbard, Jackson, Lathan, Leigh, Reed, Reynolds, Speed, Williams, and Wood. Those voting No were Armi-stead, Stokes, Collins, Peters and Sachs. Mr. Marsh abstained.
“During discussion of the above motions, the supplemental Bankson filings were received over the objection of Mr. Bryan; and the Bryan objections to the Bankson contest and the Committee’s jurisdiction were overruled because the committee has not made it a practice to require security for costs, also because the original Bankson contest letter was factually true and was undisputed by the Bryan response and was substantiated by the Secretary of State’s website, and because Mr. Bankson had qualified as a candidate and therefore was known to be a qualified elector who participated in the primary. Susan Filippeli moved that we further state that we believe the law requires that we revoke Mr. Bryan’s certification. After a second, the motion passed. Mr. Allen was instructed by the Chairman to tell the candidates and the meeting was adjourned at 5:55 PM.”
On July 3, 2008, Hubbard filed the minutes of the July 2, 2008, hearing with the trial court.
On July 3, 2008, the petitioners amended their petition, arguing that Bankson could not amend his statement of election contest to include an affidavit and offer to pay security for costs after the expiration of the 24-hour statutory limitations period for filing an election contest in a primary-election matter under § 17-13-70. They also argued that the Alabama Republican Party executive committee lost jurisdiction over the election-contest proceedings because, they argued, the last day within which to timely hold the election-contest hearing under § 17-13-85 was on or before June 23, 2008, and the hearing was held on July 2, 2008.
On July 7, 2008, the trial court entered an order denying the petitioners’ motion for a preliminary injunction because the matter would be heard expeditiously and the petitioners would suffer no harm by *499 the denial of the motion for a preliminary injunction. In that same order, the trial court dismissed without prejudice the probate judges of Calhoun and Cleburne Counties, and the secretary of state, with the understanding that those parties would carry out the trial court’s orders if necessary. On July 11, 2008, the remaining parties agreed to submit the case for a decision on the merits on motions for a summary judgment.
On July 21, 2008, the parties submitted their motions for a summary judgment and on July 28, 2008, each side responded to the other side’s motion. On August 18, 2008, the trial court granted Hubbard and Howard’s motion for a summary judgment and declared all other pending motions moot. The petitioners appeal; Howard cross-appeals.

Standard of Review

“ ‘ “[Bjecause the underlying facts are not disputed and this appeal focuses on the application of the law to those facts, there can be no presumption of correctness accorded to the trial court’s ruling.” Beavers v. County of Walker, 645 So.2d 1365, 1373 (Ala.1994) (citing First Nat’l Bank of Mobile v. Duckworth, 502 So.2d 709 (Ala.1987)). Appellate review of a ruling on a question of law is de novo. See Rogers Found. Repair, Inc. v. Powell, 748 So.2d 869 (Ala.1999); Ex parte Graham, 702 So.2d 1215 (Ala.1997).’ ”
Wood v. Booth, 990 So.2d 314, 317-18 (Ala.2008)(quoting Ex parte Forrester, 914 So.2d 855, 858 (Ala.2005)).

Discussion

Case no. 1071590

The petitioners argue that Hubbard, in his official capacity as chairman of the executive committee of the Alabama Republican Party, lacked the authority to hear Bankson’s election contest challenging Bryan’s compliance with the FCPA because Bankson failed to file his contest within 24 hours as provided in § 17-13-70, failed to timely file an affidavit averring that the statements in his letter were true as provided in § 17 — 13—78(b), Ala.Code 1975, failed to timely post security for costs as provided in § 17 — 13—78(b), and failed to aver that he was a qualified elector who participated in the primary election as required by § 17-13-78(a)(1). Hubbard argues that it was not necessary for Bankson to have filed an election contest challenging Bryan’s candidacy under the unambiguous provisions of the FCPA and that this Court should overrule recent caselaw holding that an election contest is necessary to challenge a violation of the FCPA and enforcement of the disqualification sanction set out in § 17-5-18, Ala. Code 1975.
Section 17-5-18 provides:
“A certificate of election or nomination shall not be issued to any person elected or nominated to state or local office who shall fail to file any statement or report required by this chapter. A certificate of election or nomination already issued to any person elected or nominated to state or local office who fails to file any statement or report required by this chapter shall be revoked.”
The legislature’s primary purpose in enacting the FCPA was to require candidates for public office in Alabama to disclose campaign contributions and expenditures before an election. In accordance with this purpose, the legislature provided for the harshest penalty of all in § 17-5-18 — a candidate who fails to file the reports required by the FCPA before an election shall forfeit the election.
In the present case, Bryan mailed his campaign-finance report, by certified mail, on May 29, 2008. The last *500 day for Bryan to have timely mailed the required campaign-finance report and have it “deemed to be filed in a timely fashion” pursuant to 17-5-10(b), Ala.Code 1975, was May 27, 2008, because the report had to be postmarked two days before the required filing date. Although the report arrived at the post office in Montgomery on June 2, 2008, that date was a state holiday, and the secretary of state was under no duty to pick up the report from the post office. Bryan’s report was received at the secretary of state’s office on June 3, 2008, the day of the primary election. This Court held in the plurality opinion of Ex parte Krages, 689 So.2d 799 (Ala.1997), that a filing of a report required by the FCPA on the day of the election is the equivalent of not filing the report at all. As noted above, the purpose of the FCPA campaign-finance report is to allow the electorate to view a candidate’s list of contributors and expenditures. Bryan’s filing on the day of the primary election was the equivalent of not filing a report at all because information contained in the campaign-finance report was not available to the electorate before the time for voting.
The question we must answer is whether an election contest was necessary to challenge a violation of the FCPA in light of the action taken by the Alabama Republican Party. If an election contest was necessary, then we must also decide whether Hubbard, in his official capacity as chairman of the Alabama Republican Party executive committee, was without authority to hear Bankson’s election contest because he failed to comply with the statutes governing an election contest.
This Court has recently addressed the need for filing an election contest when a candidate’s compliance with the FCPA has been questioned. See Roper v. Rhodes, 988 So.2d 471 (Ala.2008). William Roper was a candidate in the Democratic Party primary election to select the Party’s nominee for a seat on the county board of education. Following the primary election, Roper and Ronald Rhodes participated in a runoff election for that office; the runoff election resulted in a tie vote. Roper lost to Rhodes in a “domino draw” conducted by the county Democratic Party, and Rhodes was certified as the nominee. Roper sued the probate judge and the secretary of state, seeking to revoke the certificate of nomination issued to Rhodes and to remove Rhodes’s name from the general-election ballot. Also, Roper alleged that Rhodes had violated the FCPA before the primary and runoff elections. Specifically, Roper claimed that Rhodes had violated § 17-22A-8 (now § 17-5-8) of the FCPA, and he asserted that the circuit court had jurisdiction to enforce § 17-22A-21 (now § 17-5-18) of the FCPA, which requires, under certain circumstances, the revocation of the certificate of election or nomination issued to a candidate who has not complied with the FCPA.
The Roper Court held that the circuit court did not have jurisdiction to hear Roper’s claims because the alleged violations of the FCPA occurred before the primary and runoff elections; it further noted that Roper was claiming that Rhodes was ineligible to participate in those elections, and, therefore, that Roper was attempting to contest those elections. This Court held that, because Roper had not pursued an election contest of the primary election or the runoff election as then provided for in § 17-16-70 to -89 (now §§ 17-13-70 to -89), Ala.Code 1975, the circuit court did not have jurisdiction to hear any claims regarding an alleged violation of the FCPA before the general election.
*501 In Wood v. Booth, supra, a voter filed an action against the county probate judge and the secretary of state seeking declaratory, injunctive, and other relief and seeking a revocation of certificates of nomination issued to certain candidates for the state senate, as well as the removal of the candidates’ names from the general-election ballot. The voter alleged that the candidates had not filed pre-primary-election campaign-finance reports as required under the FCPA. Certain others intervened. This Court noted that although it was unclear whether the voter could have filed a pre-primary-election contest because the senate candidates at issue were unopposed, the voter was required to file an election contest following the general election, which he failed to do.
Both Roper and Wood cite Harvey v. City of Oneonta, 715 So.2d 779 (Ala.1998), in which a candidate for city council sought a judgment declaring that her opponent had not complied with the FCPA and an injunction against certifying her opponent as the winner of the election. This Court held that the circuit court did not have jurisdiction to hear the action, and it dismissed the candidate’s appeal. We held that, instead of seeking declaratory and injunctive relief in the courts, the candidate should have filed a contest to the municipal election under § 11-46-69, Ala. Code 1975, which sets out the grounds for filing a contest to a municipal election and the period for filing such a contest. On the authority of Davis v. Reynolds, 592 So.2d 546 (Ala.1991), the Harvey Court stated that “a candidate who does not file a statement or report required by the FCPA before the election in question is ineligible to be elected to the office at that election.” 715 So.2d at 780. The candidate in Harvey should have filed an election contest, and, because she failed to do so, the circuit court lacked jurisdiction to entertain the action for declaratory and injunctive relief.
In Roper, Wood, and Harvey, the party was seeking to disqualify a candidate who allegedly had not complied with the FCPA, and, after the respective election was held, the party did not file an election contest. In each case, the party sought relief in the courts to enforce the mandates of the FCPA. Roper, Wood, and Harvey held that the circuit courts did not have jurisdiction to compel compliance with the mandates of the FCPA and, in particular, the disqualification sanction, where the political parties or other officials charged with the issuance of certificates of nomination or election have not already acted. This Court did not in Roper, Wood, or Harvey address the issue whether a political party lacked authority to implement the disqualification sanction set out in § 17-5-18 (or its predecessor § 17-22A-21), Ala.Code 1975, in the absence of an election contest. That issue was simply not before the Court in any of those cases.
Although Roper, Wood, and Harvey recognize the existence of an orderly mechanism for judicial enforcement of the disqualification sanction in § 17-5-18 by way of statutorily created election contests, those cases cannot be cited as authority for limiting the power of a political party to act extrajudicially when there is no statutory basis for such a limitation because that issue was not before the Court in those cases. We would thus limit Roper, Wood, and Harvey to proceedings seeking judicial enforcement of § 17-5-18 by persons who, unlike a political party, lack the authority on their own to accomplish the revocation called for by § 17-5-18 without resort to an election contest.
Applying Roper to limit the authority of a political party to revoke a certificate of nomination it has previously issued, which, as stated above, is an issue not presented in Roper, without any indication of legisla *502 tive intent to so limit a political party’s power, would unduly narrow the protection conferred by the legislature on the public from a candidate’s failure to file a necessary financial report. Section 17-5-18 states that “[a] certificate of election or nomination .... shall be revoked”; it is silent as to whether the political party has the power to effectuate the revocation on its own initiative.
It should be noted that the Alabama Democratic and Republican Parties, having received more than 20 percent of the entire vote cast in that last general election, have the right to hold a primary election if they so choose. See § 17-13-40 and § 17-13-42, Ala.Code 1975. Here, the Alabama Republican Party by resolution chose to have a primary election for statewide and county-wide offices. After the primary election, it was the duty of the Party to certify its nominees for the respective offices based on the results of the primary election. However, the disqualification sanction of the FCPA set out in § 17-5-18 contains a penalty for failure to comply with financial-reporting requirements that overlap into the eligibility to be a nominee for the office in question. Political parties are not bound by the holdings in Roper, Wood, and Harvey, because a political party, which is clearly not a court, is not bound by § 17-16-44, Ala.Code 1975 (the jurisdiction-stripping statute).
Whether the Alabama Republican Party learned of Bryan’s failure to file his campaign-finance report by Bankson’s letter or otherwise, it had the right, duty, and responsibility to determine, under its rules and regulations, whether Bryan failed to file a report required by the FCPA and was thus ineligible to be issued a certificate of nomination, and it did so on June 20, 2008, and again on July 2, 2008. A political party has the right to determine eligibility of its nominees and to refuse to issue a certificate of nomination or to revoke a certificate of nomination if one has been entered.
On June 13, 2008, Bankson’s letter notified the Republican Party that an issue existed as to whether Bryan had complied with the requirements of the FCPA. The steering/candidate committee gave notice, held a hearing based on stipulated facts, and determined that Bryan was not qualified to be a candidate. The committee’s right, as an arm of the political party, to do so was outside the grounds for contesting an election or hearing a contest of an election. As stated above, the parties stipulated that if Hubbard were called to testify he would say that the reason the Alabama Republican Party revoked Bryan’s certificate of nomination was that, based on the filings before the steering/candidate committee, there was no dispute as to the facts, so there was no need to conduct an election-contest proceeding; Hubbard later filed a motion with the trial court stating that the hearing held by the steering/candidate committee was “on written materials submitted by both Mannon G. Bankson and Raymond C. Bryan”; and finally, the minutes of the subsequent hearing on July 2, 2008, state, in part, that “the Chairman stated the purpose of the meeting was to hear the facts on the matter” and that, after further discussion, “a motion [was made] that the Committee affirms its decision made on June 20, 2008 disqualifying Mr. Bryan based on the facts of the case,” and “Susan Filippeli moved that we further state that we believe the law requires that we revoke Mr. Bryan’s certification.” (Emphasis added.) Both of these motions were seconded, discussed, and passed. Therefore, it is apparent that both hearings conducted by the Republican Party were concerned with matters embraced in the attempted contest, but the action of the Party was taken outside the *503 contest. Once Bryan’s certifícate was revoked, a vacancy was created, and, by virtue of § 17-13-23, Ala.Code 1975, the Republican Party had the authority to certify another person as its nominee.
Even if Bankson had complied with all the requirements of §§ 17-13-70 through -89, Ala. Code 1975, in filing his “election contest,” the Alabama Republican Party could have decided independently whether its nominees were qualified. The Party, based on the undisputed facts before it—that Bryan mailed his report on May 29, 2008, and that the report was received by the secretary of state on June 3, 2008—-had the duty to revoke the certificate of nomination under § 17-5-18 of the candidate, Bryan, who failed to file a report required by the FCPA. The reason the parties in Roper, Wood, and Harvey had to file an election contest is because, unlike a political party, an individual with standing who wants to challenge an election must file a timely and proper contest. An individual has the right to assert a candidate’s eligibility as a ground for contest and thereby bring the issue before the political party involved, but separate and apart from the individual’s right to proceed, the political party still has the duty, obligation, and responsibility, consistent with its rules and bylaws and in accordance with legislative enactments, to determine whether its nominees are entitled to a certificate of nomination.
As we noted earlier, political parties are not bound by the holdings in Roper, Wood, and Harvey, because a political party, which is not a court, is not bound by § 17-16-44 (the jurisdiction-stripping statute). However, there remains a question as to whether § 17-16-44 barred the trial court from acting in the present case.
Section 17-16-44 provides:
“No jurisdiction exists in or shall be exercised by any judge or court to entertain any proceeding for ascertaining the legality, conduct, or results of any election, except so far as authority to do so shall be specially and specifically enumerated and set down by statute; and any injunction, process, or order from any judge or court, whereby the results of any election are sought to be inquired into, questioned, or affected, or whereby any certificate of election is sought to be inquired into or questioned, save as may be specially and specifically enumerated and set down by statute, shall be null and void and shall not be enforced by any officer or obeyed by any person. If any judge or other officer hereafter undertakes to fine or in any wise deal with any person for disobeying any such prohibited injunction, process, or order, such attempt shall be null and void, and an appeal shall lie forthwith therefrom to the Supreme Court then sitting, or next to sit, without bond, and such proceedings shall be suspended by force of such appeal; and the notice to be given of such appeal shall be 14 days.”
Clearly, in enacting § 17-16-44 the legislature restricted the jurisdiction of the circuit courts in regard to elections. “Election challenges are strictly statutory, and this Court has consistently recognized the Legislature’s intent in empowering the political parties to settle primary election disputes.” McAdory v. Alabama Democratic Party, 729 So.2d 310, 311 (Ala.1999). “The only caveat to a state executive committee’s otherwise plenary power to make such a determination is that, in doing so, the committee cannot ‘run afoul of some statutory or constitutional provision.’ ” Alabama Republican Party v. McGinley, 893 So.2d 337, 346 (Ala.2004) (quoting Ray v. Garner, 257 Ala. 168, 171, 57 So.2d 824, 826 (1952)).
*504 In the present case, the petitioners filed a petition for a writ of prohibition, mandamus, certiorari, or other appropriate extraordinary relief pursuant to § 6-6-640, Ala.Code 1975, to prevent Hubbard, in his official capacity as chairman of the Alabama Republican Party executive committee, from revoking Bryan’s certificate of nomination because, they alleged, Bank-son’s election contest “was defective and failed to quicken the jurisdiction of the committee for the reason that it failed to provide security, it was not certified by the affidavit of Mannon G. Bankson, Jr., and it did not contain any averment that the said Mannon G. Bankson, Jr., was a qualified elector when the primary was held and that he participated in it as required by § 17-13-78.” The petitioners also sought to prohibit Hubbard, the probate judges, and the secretary of state from taking any action that would prevent Bryan’s name from appearing on the November 4, 2008, general-election ballot.
The petitioners’ challenge is in essence a challenge to the Alabama Republican Party’s actions in revoking Bryan’s certificate of nomination. Hubbard specifically argues, and we agree, that the Alabama Republican Party was not determining an election contest but was acting to comply with § 17-5-18 to revoke a certificate of nomination of a candidate who had failed to comply with the reporting requirements of the FCPA. The petitioners sought relief in the trial court to ascertain the validity of the actions taken by the Alabama Republican Party, and the trial court had jurisdiction to determine whether the Alabama Republican Party had “ ‘run afoul of some statutory or constitutional provision’ ” in revoking the certificate of nomination of the candidate with the most electoral votes in the June 3, 2008, primary. Therefore, the jurisdictional limits of § 17-16-44 are not applicable here.
The judgment of the trial court in case no. 1071590 is affirmed.

Case no. 1071662

Howard intervened in the underlying action and subsequently filed a cross-appeal from the trial court’s summary judgment, arguing that the summary judgment was not a final judgment. Howard intervened in the petitioners’ action, asserting that Bryan had not complied with the FCPA and that, as a voter, Howard did not have the benefit of the financial information regarding Bryan’s campaign prior to the election that he needed to make an informed decision. However, unlike a political party, Howard’s only remedy was judicial in nature — to file an election contest as discussed in Roper. Howard did not have standing to intervene in the actions taken by the Alabama Republican Party to enforce the FCPA with regard to the certification of its nominees. “ ‘ “Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation.” ’ ” Dunning v. New England Life Ins. Co., 890 So.2d 92, 97 (Ala.2003) (quoting Ex parte Fort James Operating Co., 871 So.2d 51, 54 (Ala.2003), quoting in turn National Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 255, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994)). Howard did not have standing to intervene in the underlying action; therefore, we dismiss Howard’s cross-appeal.
1071590 — AFFIRMED.
COBB, C.J., and LYONS, WOODALL, STUART, and PARKER, JJ., concur.
SEE, SMITH, and MURDOCK, JJ., concur in the result.
1071662 — APPEAL DISMISSED.
COBB, C.J., and LYONS, WOODALL, STUART, and PARKER, JJ., concur.
*505 SEE and SMITH, JJ., concur in the result.
MURDOCK, J., dissents.

. Section 17 — 5—8(a)(1), Ala.Code 1975, requires a candidate’s campaign committee to file, between 10 and 5 days before an election, a report of contributions and expenditures. The parties refer to this report as a "10/5 day report” and a "10-5 day report.”